(No. 77362.—

MOLLY GRZESZCZAK, Indiv. and as Adm'r of the Estate of Jeffrey Grzeszczak, Deceased, and the Estates of April Grzeszczak, Rebecca Grzeszczak and Eric Grzeszczak, Their Minor Children, Appellee, v. ILLINOIS FARMERS INSURANCE COMPANY, Appellant.

*Opinion filed November 30, 1995.*

BILANDIC, C.J., took no part.

Hinshaw & Culbertson, of Chicago (Joshua G. Vincent and Keith G. Carlson, of counsel), for appellant.

.Susan G. Feibus and Louis B. Garippo, of Kane, Obbish, Propes & Garippo, of Chicago, for appellee.

Marci A. Eisenstein, Joseph A. Cancila, Jr., and Sondra A. Hemeryck, of Schiff, Hardin & Waite, of Chicago, for *amicus curiae* State Farm Mutual Automobile Insurance Co.

James Paul Costello, of Chicago, for *amicus curiae* Illinois Trial Lawyers Association.

JUSTICE HARRISON delivered the opinion of the court:

In this appeal, we are asked to decide whether plaintiff, Molly Grzeszczak, and her three minor children are entitled to stack the underinsured-motorist coverage contained in two automobile policies issued by defendant, Illinois Farmers Insurance Company (Illinois Farmers). Molly Grzeszczak initiated an action for declaratory judgment, on behalf of herself and her three minor children, to construe the limits of underinsured-motorist coverage contained in two policies. The circuit court of Cook County entered judgment on the pleadings in favor of Illinois Farmers (735 ILCS 5/2—615(e) (West 1992)), reasoning that the antistacking clauses

contained in the insurance policies were clear and unambiguous, precluding the stacking of underinsured-motorist coverage. The appellate court reversed and remanded. (260 Ill. App. 3d 850.) We granted leave to appeal (145 Ill. 2d R. 315). For the reasons that follow, we reverse the appellate court's judgment and affirm the judgment of the circuit court.

The facts are not in dispute. On November 19, 1989, Molly Grzeszczak's decedent, Jeffrey Grzeszczak, was killed while riding in an automobile owned and driven by his brother, Richard Grzeszczak. At the time of the accident, Richard was insured by CNA Insurance Companies (CNA). The limits of Richard's policy were $100,000 for each person and $300,000 for each occurrence. After Molly filed suit on behalf of herself and her three minor children against Richard, CNA settled with her for $100,000, the limit of Richard's policy.

Jeffrey was also covered on two separate insurance policies which were purchased from Illinois Farmers. Jeffrey was the only named insured on the first policy, which covered a 1984 Chevrolet automobile. The first policy provided underinsured-motorist coverage to Jeffrey and his family for injuries received as a result of auto accidents involving any automobile. The first policy also provided coverage for any nonfamily passenger in the 1984 Chevrolet if the accident was caused by an underinsured motorist. The second policy covered a 1983 Oldsmobile, and both Jeffrey and his wife, Molly, were named as the insureds. Since the underinsured-motorist coverage on the first vehicle followed the Grzeszczaks and their family members regardless of where they were injured, the coverage from the second policy overlapped the coverage the Grzeszczaks were already entitled to receive from the first policy. However, the second policy did provide coverage to persons not covered by the first policy, namely, nonfamily passengers riding in the 1983 Oldsmobile who were in-

volved in an accident with an underinsured motorist. Both policies provided for underinsured-motorist coverage of $100,000 for each person and $300,000 for each occurrence. The Grzeszczaks paid an identical premium of $23.30 for underinsured-motorist coverage under each policy.

In December 1990, Molly notified Illinois Farmers of the $100,000 settlement with Richard's insurer, CNA. Molly demanded payment from Illinois Farmers of an additional $100,000, claiming that all of her family's damages were not covered by the $100,000 limit of Richard's policy. Her theory was that her husband Jeffrey had a combined total of $200,000 underinsured-motorist coverage under the two policies. She arrived at this $200,000 figure by doubling the $100,000 limit under each policy, reasoning that separate premiums for each vehicle entitled separate $100,000 amounts of coverage. Thus, Molly claimed that her family was entitled to an additional $100,000, which amounted to the difference between Jeffrey's total coverage of $200,000, and the $100,000 recovered from Richard Grzeszczak's policy with CNA. Illinois Farmers denied Molly's claim that the coverage should be stacked to provide a total recovery of $200,000, based on antistacking clauses contained in each policy. Illinois Farmers noted that according to these clauses, the insured was not permitted to aggregate or "stack" the underinsured-motorist benefits and, in essence, receive more than the single policy limit.

The antistacking provisions in the Grzeszczaks' policies provided:

> "PART V—CONDITIONS
> 6. Two or More Cars Insured
> With respect to any accident or occurrence to which this and any other auto policy issued to you by any member company of the Farmers Insurance Group of Companies applies, the total limit of liability under all

the policies shall not exceed the highest applicable limit of liability under any one policy."
The policies further provided:
"DEFINITIONS
Throughout this policy 'you' and 'your' mean the 'named insured' shown in the Declarations and spouse if resident of the same household."

After Illinois Farmers denied the Grzeszczaks' claim, Molly filed a complaint on behalf of herself and her three minor children for declaratory judgment to determine their rights to underinsured-motorist coverage under the two policies. Molly founded her claim on the proposition that antistacking clauses are unenforceable when the language employed by the insurance company is unclear or ambiguous. (*Kaufmann v. Economy Fire & Casualty Co.* (1979), 76 Ill. 2d 11; *Squire v. Economy Fire & Casualty Co.* (1977), 69 Ill. 2d 167.) She claimed that she was entitled to aggregate the limits of underinsured-motorist coverage in the two policies at issue here because the antistacking provisions were ambiguous. According to Molly, the antistacking provisions were ambiguous because: (1) the two policies named different insureds; (2) the two $23.30 premiums should have purchased two $100,000 coverage limits; and (3) Illinois Farmers never explained the limits of the coverage, and it was unfair to imply such knowledge to a layperson. Molly further claimed that the identical $23.30 premium that her family was charged for underinsured-motorist coverage on the second vehicle was exorbitant. Molly argued that this exorbitant premium amounted to overreaching on the part of Illinois Farmers and required the circuit court to invalidate the antistacking clauses on public policy grounds.

Illinois Farmers, in turn, filed a motion under section 2—615(e) of the Code of Civil Procedure (735 ILCS 5/2—615(e) (West 1992)), for judgment on the pleadings. Illinois Farmers alleged that the antistacking clauses

must be enforced as written, under *Menke v. Country Mutual Insurance Co.* (1980), 78 Ill. 2d 420, where this court held that an almost identical antistacking clause contained no ambiguity and clearly provided that the liability of the insurer could not exceed the highest limit under any one policy. (*Menke*, 78 Ill. 2d at 424.) The circuit court agreed that *Menke* controlled and that Illinois Farmers' antistacking clauses precluded the plaintiff's recovery. It therefore entered judgment on the pleadings in favor of Illinois Farmers.

The appellate court reversed, finding that plaintiff stated a cause of action by alleging that the $23.30 premium for the second car was exorbitant in violation of public policy. (260 Ill. App. 3d at 855.) In reversing, the appellate court agreed that the antistacking clauses in the two policies were clear and unambiguous. The appellate court also acknowledged that, as a general rule, such unambiguous antistacking clauses are to be enforced as written. However, the court seemed to recognize an exception to this general rule based on the language in *Menke* that stated: "There is no evidence of overreaching on the part of defendant, the premiums charged were not exorbitant, and, in short, no reason is advanced which would require invalidation of the limitation clause on public policy grounds." *Menke*, 78 Ill. 2d at 426.

In light of this language in *Menke*, the appellate court reasoned that if a plaintiff could establish overreaching by an insurance company through evidence of exorbitant premiums, a circuit court would be justified in refusing to enforce antistacking clauses contained in insurance contracts. To determine if overreaching took place in the present case, the appellate court examined the premiums charged and the coverage provided under each policy. The court noted that the Grzeszczaks paid an identical $23.30 premium for underinsured-motorist

coverage under the second policy, yet the only additional coverage the second policy provided was for nonfamily passengers in the 1983 Oldsmobile who were involved in an accident with an underinsured motorist. The court held that by pointing out the difference in coverage and arguing that the premium on the second car should have been less, Molly stated a claim for overreaching. The court also noted that plaintiff was able to distinguish *Menke* because the three premiums paid by the insured in that case differed. Finally, the court reasoned that because plaintiff was able to allege an exorbitant premium, public policy grounds may exist for invalidating the antistacking clauses. Accordingly, the court reversed, holding that the trial court erred in entering judgment on the pleadings. Illinois Farmers appeals from this decision.

A cause of action should be dismissed on the pleadings only if it is clearly apparent that no set of facts can be proven which would entitle a plaintiff to relief. (*Ogle v. Fuiten* (1984), 102 Ill. 2d 356, 360-61.) Here, the facts are not in dispute. Thus, the issue of whether the underinsured-motorist coverage may be aggregated presents a question of law. (*Bruder v. Country Mutual Insurance Co.* (1993), 156 Ill. 2d 179, 185.) In this case, we find that the circuit court properly granted judgment on the pleadings in favor of Illinois Farmers.

When faced with interpreting antistacking clauses, this court has stated that such clauses will be enforced as written if the clause is unambiguous and does not violate public policy. (*Menke*, 78 Ill. 2d at 423-24.) Thus, in reaching our decision, the first question we must address is whether the antistacking clauses were clear and unambiguous. It is well established that if an insurance clause is ambiguous, it must be construed in favor of the insured. (*Squire*, 69 Ill. 2d at 179.) However, if a clause is unambiguous, there is no need for construction, and it

must be enforced according to its terms. *Menke*, 78 Ill. 2d at 423-24.

Although the appellate court reversed the trial court's decision awarding judgment on the pleadings in favor of Illinois Farmers, it did agree with the trial court that the antistacking clauses at issue were unambiguous. In this court, Molly contends that the appellate court erred in finding the clauses unambiguous and failed to consider the various factors as a whole that rendered the provisions ambiguous. She concedes that the antistacking language itself may have been facially unambiguous. However, Molly claims that the circumstances under which the policies were executed, along with her reasonable expectation of certain coverage, rendered the antistacking language ambiguous. She contends that the fact that the two insurance policies involved different named insureds lends support to her position that a total of $200,000 in underinsured-motorist coverage was purchased. Molly further argues that by paying two identical $23.30 premiums for $100,000 of underinsured-motorist coverage under each policy, her family's only reasonable expectation would be that these premiums would yield $200,000 in total coverage. Molly's final point in support of her argument that these clauses were ambiguous is that it is unfair for a court to impute knowledge of such unexpected antistacking clauses to lay purchasers.

Illinois Farmers, in turn, argues that the antistacking clauses at issue are clear and unambiguous. Illinois Farmers further contends that plaintiff's unilateral expectations do not alter the clarity or effect of the unambiguous antistacking provisions. We agree with Illinois Farmers that the policy language contains no ambiguity. We further conclude that none of the factors asserted by plaintiff, by themselves or taken as a whole, rendered the antistacking clauses ambiguous.

First, the clauses clearly state that the "total limit" of Illinois Farmers' liability under all the policies "shall not exceed the highest applicable limit of liability under any one policy." Such language unambiguously prevents an insured from aggregating the coverage provided by multiple policies. In this case, plaintiff owned two underinsured-motorist policies issued by defendant. According to this clear language, plaintiff's recovery could not exceed $100,000, the highest limit under a single policy. Molly even concedes that the language itself has clear meaning. Furthermore, this court has construed a virtually identical antistacking provision as clear and unambiguous in *Menke*, 78 Ill. 2d at 424.

As in the present case, the clause at issue in *Menke* provided that "the total limit of the Company's liability under all such policies shall not exceed the highest applicable limit of liability or benefit amount under any one such policy." (*Menke,* 78 Ill. 2d at 423.) The plaintiff in *Menke* owned three uninsured-motorist policies, all provided by defendant. This court held that according to the policy language, which was clearly applicable to a situation with multiple coverages provided by a defendant, the coverages could not be stacked. We conclude that like the policy at issue in *Menke*, Illinois Farmers' policy clearly and unambiguously prohibited the stacking of underinsured-motorist coverage.

In addition, the antistacking clauses were not rendered ambiguous by any of the factors asserted by plaintiff. Regarding the first factor, no ambiguity was created by the fact that one policy was issued to Jeffrey and Molly Grzeszczak and the other policy was issued only to Jeffrey. Plaintiff claims that the antistacking clauses were ambiguous because they specifically stated that they applied only to policies "issued to you." Plaintiff further tries to draw a distinction regarding who would be considered a named insured and who was

merely covered under the policy. Regardless of any distinction between a named insured and someone covered under the policy, here both policies were issued to Jeffrey. Since the antistacking clauses specifically stated that they would apply to policies issued to the named insured, both antistacking clauses under both policies clearly applied to Jeffrey. Thus, plaintiff would be prohibited from stacking coverage between the two policies.

Furthermore, the fact that Molly's name appeared along with Jeffrey's as the named insured on one of the policies does not create any sort of ambiguity. The definition section of both policies specifically provides that throughout the policy "you" and "your" mean the named insured and "spouse if resident of the same household." It is undisputed that Jeffrey and Molly were married and residing together at the time of Jeffrey's death. Thus, for purposes of determining the effect of the antistacking clauses, both of the policies in question were issued to Molly and Jeffrey. There is no distinction between Molly's and Jeffrey's status. Both would be considered named insureds under the definition of "you" and "your." Thus, both Molly and Jeffrey would be prohibited from stacking coverage from the two policies.

Moreover, this court addressed the same issue of whether different named insureds rendered antistacking clauses ambiguous in *Bruder v. Country Mutual Insurance Co.* (1993), 156 Ill. 2d 179. In *Bruder*, the plaintiff was injured in a car accident and attempted to stack the uninsured-motorist coverage of a personal auto policy issued to herself and her husband with a business auto policy issued only to her husband. (*Bruder*, 156 Ill. 2d at 182.) The personal auto policy contained an almost identical antistacking clause with the same "issued to you" language present in this case. (*Bruder*, 156 Ill. 2d at 187-88.) The personal auto policy defined "you" as

"the person named on the declarations page of this policy and that person's spouse," but this definition was not contained in the business auto policy. (*Bruder,* 156 Ill. 2d at 187-88.) Yet, after examining the definition, this court reasoned that, in effect, the business policy had been "issued to" the plaintiff as well as her husband, even though she was not listed on it as a named insured. *Bruder,* 156 Ill. 2d at 187-88.

The analysis in *Bruder* is applicable to the case at bar. In both cases the word "you" is defined as the named insured and spouse if a resident of the same household. However, in this case the definition is contained in both of the policies at issue. To determine to whom the policy was issued, we refer to the provisions of that particular policy. Here, since both of the policies provided that they were issued to Jeffrey and his spouse, there was no difference in the named insured to create any ambiguity in the antistacking clauses. Although Molly's name does not appear on the policy covering the 1984 Chevrolet, under the definition of "you" she would still be a named insured. Thus, plaintiff failed to prove that this factor rendered the clauses ambiguous.

Regarding the other arguments asserted by plaintiff, the Grzeszczaks' payment of two identical premiums does not create any ambiguity in the antistacking clauses at issue in this case. Molly argues that since she and decedent paid two identical premiums of $23.30 for underinsured-motorist coverage under each policy, their only reasonable expectation would be that they received two separate coverages of $100,000 apiece. Molly further questions whether it is fair to impute knowledge of these antistacking provisions to lay purchasers. This notion that separate premiums entitles an insured to separate coverage is often referred to as the "premium rule." Molly asserts that the "premium rule," which prevents

insurance companies from collecting premiums for a given amount of coverage and then applying limiting clauses to reduce its liability, should be applied in this case.

This court has held that the payment of multiple premiums is of no consequence where the intent of the parties to the insurance contract was manifested in the clear and unambiguous language of an antistacking provision. (*Menke*, 78 Ill. 2d at 425.) In *Menke*, this court rejected the same arguments made by the plaintiff in the present case, in the context of uninsured-motorist coverage. As previously stated, in *Menke*, the three insurance policies at issue contained antistacking language virtually identical to that in the present case. As in the case at bar, in *Menke* the plaintiff pointed to the fact that he paid three separate premiums in the amounts of $1.60, $1.70 and $1.80 for the uninsured-motorist coverage and argued that he must have intended to receive three separate coverages. The plaintiff in *Menke* further urged this court to examine the intent of the parties to the policy and to apply the policy as intended. This court rejected the plaintiff's argument, reasoning that "the existence of any such subjective intent of the plaintiff is rebutted by the clear and unambiguous policy language from which it can be readily seen and understood that coverage was limited." (*Menke*, 78 Ill. 2d at 425.) This court further held that the intent of the defendant insurance company and plaintiff was "clearly expressed in the unambiguous language of the antistacking clause" and, thus, there was "no need to construe the policy language." *Menke*, 78 Ill. 2d at 425.

We continue to adhere to this court's position in *Menke*. The policy language itself must be viewed as expressing the parties' intent, and any contrary expectations of the insured are irrelevant. The antistacking

clauses at issue clearly provided that coverage could not be stacked. Thus, according to the reasoning in *Menke*, Molly's belief that she was receiving two separate coverages of $100,000 apiece was rebutted by the policy language which clearly limited coverage. The policy language must be enforced according to its clear, unambiguous terms, which prevent plaintiff from stacking the coverage.

Furthermore, the "premium rule" referred to by plaintiff has been interpreted by Illinois courts to be a rule of construction. (See *Greenholt v. Inland National Insurance Co.* (1980), 87 Ill. App. 3d 638, 641.) As a rule of construction, the "premium rule" should not be applied "unless the insurance contract reveals an ambiguity as to the amount of coverage intended." (*Greenholt*, 87 Ill. App. 3d at 641.) The premium rule is only useful to resolve an ambiguous provision and not to create ambiguities that do not exist. Since we have found no ambiguity in the antistacking clauses at issue, there is no need for us to apply the "premium rule." We therefore find that none of the factors cited by plaintiff rendered the antistacking clauses ambiguous.

Having concluded that the antistacking clauses are clear and unambiguous, the next issue we must address is whether the clauses violate public policy. When this court has been asked to examine antistacking clauses, it has concluded that in general such clauses do not contravene public policy. (*Bruder*, 156 Ill. 2d at 184.) In addition, the Illinois Insurance Code adopted the *Menke* decision and now expressly authorizes the use of antistacking provisions in motor vehicle insurance policies. (215 ILCS 5/143a—2(5) (West 1992).) Section 143a—2(5) provides:

> "Nothing herein shall prohibit an insurer from setting forth policy terms and conditions which provide that if the insured has coverage available under this Section under more than one policy or provision of coverage, any

recovery or benefits may be equal to, but may not exceed, the higher of the applicable limits of the respective coverage, and the limits of liability under this Section shall not be increased because of multiple motor vehicles covered under the same policy of insurance." 215 ILCS 5/143a—2(5) (West 1992).

Since the *Menke* decision was codified, this court has held that provisions which forbid stacking of uninsured-motorist coverage are not contrary to public policy and must be enforced as written if they are unambiguous. (*Bruder*, 156 Ill. 2d at 184.) Furthermore, this court has recognized that the purpose of underinsured-motorist coverage is to fill the gap between the amount of the tortfeasor's insurance and the amount of underinsured-motorist coverage the insured opted to buy. *Sulser v. Country Mutual Insurance Co.* (1992), 147 Ill. 2d 548, 556.

Because we have already determined that the anti-stacking clauses were unambiguous, this factor will not warrant invalidating the clauses. In addition, the purpose of underinsured-motorist coverage would not be contravened by enforcing the antistacking provisions in this case. Here, Jeffrey's brother carried bodily injury liability insurance equal to Jeffrey's underinsured-motorist coverage in the amount of $100,000. The Grzeszczaks received all that they were entitled to from Richard's policy limits alone, because it was the same amount of underinsured-motorist coverage that they opted to buy from Illinois Farmers. There was no gap to fill between Richard's coverage and the amount of underinsured-motorist coverage the Grzeszczaks were entitled to receive. Thus, the purpose of the underinsured-motorist statute is not defeated here by the antistacking clauses.

Despite these cases and provisions, in the present case the appellate court reasoned that Molly stated a cause of action by alleging that the second identical

premium paid for underinsured-motorist coverage was exorbitant in violation of public policy. The appellate court, relying on *Menke*, held that if a plaintiff could prove that an insurance company charged exorbitant premiums which constitute overreaching, a circuit court would be justified in refusing to enforce antistacking provisions present in insurance contracts. (260 Ill. App. 3d at 855.) As stated, the court based its reasoning on the following language from *Menke*: "There is no evidence of overreaching on the part of defendant, the premiums charged were not exorbitant, and, in short, no reason is advanced which would require invalidation of the limitation clause on public policy grounds." *Menke*, 78 Ill. 2d at 426.

The appellate court also distinguished *Menke* from the case at bar. (260 Ill. App. 3d at 855.) *Menke* mentioned public policy considerations as a possible ground for not enforcing antistacking clauses. However, the court in *Menke* determined that such grounds were not present in that case, reasoning: "Nor is public policy contravened by the fact that plaintiff paid premiums for each of the uninsured motorist provisions. Plaintiff agreed to the unambiguous limitations on coverage." (*Menke*, 78 Ill. 2d at 425.) The appellate court noted that unlike here, in *Menke* the premiums were not alleged to be exorbitant and, in fact, the premiums charged for uninsured-motorist coverage on the two additional vehicles were lower than the premiums on the first one. In contrast, the court pointed out that, in the present case, Molly was charged an identical $23.30 premium on the second policy, when a portion of the coverage overlapped the coverage she was already entitled to receive by having underinsured-motorist coverage on the first car. In light of this difference, the appellate court concluded that plaintiff stated a claim for overreaching.

Illinois Farmers, for its part, contends that the present case cannot be distinguished from *Menke*. Illinois Farmers claims that the identical $23.30 premium on the second vehicle cannot be considered exorbitant and in violation of public policy because the plaintiff received additional coverage under the second policy.

We agree that public policy is not violated by the fact that plaintiff paid two identical premiums for each of the underinsured-motorist provisions in this case. In addition, we find that *Menke* cannot be distinguished from the case at bar. It is true that in *Menke* the premium charged for each vehicle differed in the amounts of $1.80, $1.70, and $1.60 on each respective auto. (*Menke*, 78 Ill. 2d at 422.) However, the dissent in *Menke* points out that the reductions were based on the length of time the plaintiff held each policy without making a claim, rather than on any difference in coverage afforded under the policies. (*Menke*, 78 Ill. 2d at 431 (Clark, J., dissenting).) Thus, the premiums charged in *Menke* did not vary per policy based on the amount of uninsured-motorist coverage each policy provided. In fact, in *Menke* the premiums paid for the second and third policy were equivalent to that charged by the first policy, which brought much more extended coverage. *Menke*, 78 Ill. 2d at 431 (Clark, J., dissenting).

Moreover, the appellate court's interpretation of *Menke* was rejected by the decision in *Obenland v. Economy Fire & Casualty Co.* (1992), 234 Ill. App. 3d 99, *aff'd* (May 20, 1993), No. 74296 (unpublished summary disposition under Supreme Court Rule 302(c)), a case which addressed the same issue as the present case. In *Obenland*, the plaintiffs argued that since they paid three identical premiums for underinsured-motorist coverage on three vehicles, enforcing the antistacking clauses would be against public policy. The plaintiffs in *Obenland* attempted to distinguish *Menke* in the same

way as does Molly in the case at bar. In *Obenland*, the plaintiffs pointed out that they paid identical premiums for underinsured-motorist coverage on three vehicles, whereas in *Menke* the premiums on the two additional vehicles were lower. (*Obenland*, 234 Ill. App. 3d at 108.) They expressed the exact same concerns as Molly, noting that the underinsured-motorist coverage on the first vehicle followed the named insured and his family members and protected them regardless of where they were injured. Thus, as in the present case, the *Obenland* plaintiffs explained that the identical premiums on the two other cars afforded additional coverage only for non-family-member occupants of those vehicles. The plaintiffs in *Obenland* argued that since they were charged identical premiums for overlapping coverage, the antistacking clauses were against public policy. *Obenland*, 234 Ill. App. 3d at 108-09.

The court in *Obenland* rejected the plaintiffs' attempt to distinguish *Menke*, reasoning that *Menke* could not be "properly distinguished on the basis of whether the premiums were identical or reduced for the two additional coverages." (*Obenland*, 234 Ill. App. 3d at 109.) The court further reasoned that the majority in *Menke* did not cite to "the difference in the premiums as a basis for its decision that public policy was not contravened by prohibiting stacking even where separate premiums were charged for each coverage." (*Obenland*, 234 Ill. App. 3d at 109.) The court pointed out, as we have here, that the different premiums charged in *Menke* did not reflect the difference in coverage provided under the policies. Instead, as stated, any difference in the premiums was based on the length of time the plaintiff held each policy without making a claim. Thus, the court found that, according to *Menke*, no public policy grounds existed for invalidating the unambiguous clauses. *Obenland*, 234 Ill. App. 3d at 109.

We believe that *Obenland* and *Menke* are directly on point with the case at bar and persuade us to reverse the appellate court's decision in this case. It cannot be said that the antistacking clauses at issue should be invalidated on public policy grounds. This case presents the same circumstances as *Obenland*, where identical premiums were charged, but the court determined that any public policy concerns present did not require the invalidation of clearly written provisions. Charging identical premiums for underinsured-motorist coverage on multiple vehicles is not a basis for refusing to enforce clear and unambiguous antistacking clauses, where an insured receives some additional coverage for each premium paid. In this case, plaintiff concedes that the second premium did purchase some additional coverage for nonhousehold members. Accordingly, as provided by the unambiguous antistacking clauses, coverage cannot be stacked in this case.

For the foregoing reasons, we reverse the judgment of the appellate court. We affirm the judgment of the circuit court, granting Illinois Farmers' motion for judgment on the pleadings.

*Appellate court reversed;*
*circuit court affirmed.*

CHIEF JUSTICE BILANDIC took no part in the consideration or decision of this case.