Ella M. ALLEN, Plaintiff–Appellee,

v.

TRANSAMERICA INSURANCE COMPANY, Defendant–Appellant.

No. 96–1865.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 4, 1996.

Decided June 11, 1997.*

* **Editor's Note:** This opinion is republished with the correct attachment.

Richard G. Lambert (argued), Harris, Lambert, Howerton & Dorris, Marion, IL, for Plaintiff–Appellee.

John L. McMullin, T. Michael Ward (argued), Brown & James, St. Louis, MO, for Defendant–Appellant.

Before BAUER, RIPPLE, and MANION, Circuit Judges.

BAUER, Circuit Judge.

This diversity action requires us to interpret the underinsured motorists' provision of an insurance policy. The insured, Ella M. Allen, was in a car accident on May 2, 1994. She alleged that she sustained at least $150,000 in damages. She later filed a personal injury action against Candice Houston, the driver of the other car, and recovered $50,000 (the limit under Houston's policy) from Houston's insurer. Allen sought additional recovery from her own insurer, Transamerica Insurance Company, under the underinsured motorists' provision of her motor vehicle liability insurance policy. Allen filed a declaratory judgment action against Transamerica in state court, seeking a declaration that she was entitled to $100,000 in underinsured motorists' coverage. The action was later removed to federal court. The district court granted summary judgment in favor of Allen, declaring that Allen was entitled to $100,000 in coverage. Transamerica appeals. We affirm.

## 1. Jurisdiction

Allen originally filed this action in the Circuit Court for the First Judicial Circuit, Williamson County, Illinois, on April 7, 1995. Transamerica removed the action to federal court pursuant to 28 U.S.C. § 1446. The district court granted summary judgment in favor of Allen and against Transamerica on March 7, 1996 and issued a Memorandum and Order and a Judgment in a Civil Case. Transamerica filed its Notice of Appeal in this Court on April 5, 1996, and contended that we have jurisdiction over the final judgment of the district court pursuant to 28 U.S.C. § 1291. On April 17, 1996, we ordered Transamerica to show cause why the appeal should not be dismissed for lack of jurisdiction. We indicated that the appeal might be premature because the district court's judgment did not award any relief to Allen; it merely granted Allen's motion for summary judgment. *See American Inter–Fidelity Exchange v. American Re–Insurance Co.*, 17 F.3d 1018, 1020 (7th Cir.1994) ("[W]hen the prevailing party is entitled to a declaratory judgment, the district court must draft and enter such a judgment rather than assume that the opinion serves the purpose"); *see also Camp v. Gregory*, 67 F.3d 1286, 1290 (7th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 2498, 135 L.Ed.2d 190 (1996). Subsequent to our April 17 order, and in response to a motion by Transamerica, the district court entered an Amended Judgment in a Civil Case on May 6, 1996. It was appropriate for us to retain jurisdiction over this appeal until the district court entered a proper declaratory judgment because once the proper judgment was entered, the original Notice of Appeal was sufficient to confer jurisdiction. *See American Inter–Fidelity Exchange*, 17 F.3d at 1020; *see also Metropolitan Life Ins. Co. v. Estate of Cammon*, 929 F.2d 1220, 1222 (7th Cir.1991). We now proceed to the merits.

## 2. The Policy

The policy in issue, TRA 1348 85 89, was in effect from January 16, 1994 to July 16, 1994. Allen's husband, Alfred, was the named insured on the policy. The policy insured two cars belonging to Allen and her husband: a Chevrolet Cavalier and a Pontiac LeMans. The policy charged separate premiums for each vehicle. Allen was covered under the policy because she was Alfred's family member and because she was driving the Cavalier, a covered automobile, at the time of the accident.

A reproduction of the Declarations page of the policy is appended to this opinion for convenience. The Declarations page contains two columns for the Cavalier and two columns for the LeMans. For each car, the first column lists the type and limit of coverage, and the second column lists the premium paid for each type of coverage. Each car under the policy carries coverage of $50,000 per person and $100,000 per accident or occurrence for bodily injuries. The underinsured motorists' coverage also sets limits of $50,000 per person and $100,000 per accident or occurrence on each car. The policy provides that:

> [Transamerica] will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "underinsured motor vehicle" because of "bodily injury:"
>
> 1. Sustained by an "insured;" or
> 2. Caused by an accident.

The policy defines an "underinsured motor vehicle" as "a land motor vehicle ... to which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury is less than the limit of liability for this coverage."

The provision of the policy that is most relevant to this case is the "anti-stacking" provision, which is found in the "Split Underinsured Motorists Limits" Endorsement. The anti-stacking provision reads:

> The *limit of liability* shown in the Schedule or in the Declarations for each person for Underinsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person, the limit of liability shown in the Schedule or in the Declarations for each accident for Underinsured Motorists Coverage is *our maximum limit of liability* for all damages for "bodily injury" resulting from any one accident. *This is the most we will pay regardless of the number of:*
>
> 1. "Insureds;"
> 2. Claims made;
> 3. *Vehicles* or premiums shown in the Declarations; or
> 4. Vehicles involved in the accident.

(emphasis added). There is no ambiguity in this language, read alone. Illinois courts have held similar provisions to be unambiguous and sufficient to prevent the stacking of coverage when one policy covers multiple vehicles. *See Grzeszczak v. Illinois Farmers Ins. Co.*, 168 Ill.2d 216, 224–25, 213 Ill.Dec. 606, 610–11, 659 N.E.2d 952, 956–57 (1995); *Frigo v. Motors Ins. Corp.*, 271 Ill.App.3d 50, 64, 207 Ill.Dec. 724, 733, 648 N.E.2d 180, 189 (1st Dist.1995); *Obenland v. Economy Fire & Cas. Co.*, 234 Ill.App.3d 99, 174 Ill.Dec. 915, 599 N.E.2d 999 (1st Dist.1992), *aff'd*, 191 Ill.Dec. 158, 623 N.E.2d 748 (1993). *But see Gibbs v. Madison Mut. Ins. Co.*, 242 Ill. App.3d 147, 152–53, 182 Ill.Dec. 719, 723–24, 610 N.E.2d 143, 147–48 (5th Dist.), *appeal denied*, 151 Ill.2d 563, 186 Ill.Dec. 380, 616 N.E.2d 333 (1993) (addressing multiple policies).

However, this case requires us to answer the question: what is the *limit of liability* referred to in the provision? The provision directs the reader to either the "Schedule" or the "Declarations" to determine the amount of the limit. In the policy, there are two documents labeled "Schedule," both of which provide spaces for the insurer to fill in the limits of liability for coverage. These spaces have been left blank on both Schedules. Therefore, the Declarations page is the only place to look to determine the limit of liability. And herein lies the problem.

Under the heading "Coverages and Limits," the Declarations page lists the limits of coverage and the premiums paid for the Cavalier in two columns and the separate limits of coverage and premiums paid for the LeMans in two adjacent columns. Allen argues that this columnar arrangement renders the anti-stacking clause ambiguous, because it is unclear whether the "limit of liability" only refers to the limit on the Cavalier, the limit on the LeMans, or the two limits added together. That is, Allen believes that the policy's underinsured coverage is $100,000 per person and $200,000 per accident. Transamerica contends that the coverage is

only $50,000 per person and $100,000 per accident.

### 3. The Summary Judgment Motions

Allen filed a motion for summary judgment in the district court, arguing that she was entitled to "stack" the $50,000 per person limit for underinsured motorists' coverage for each car insured under the policy for a total of $100,000 in underinsured motorists' coverage. She contended that ambiguities in the policy exist when the antistacking clause is read in conjunction with the Declarations page, rendering the anti-stacking language unenforceable. Transamerica also filed a motion for summary judgment, arguing that Allen was not entitled to underinsured motorists' coverage because (1) Houston was not an underinsured motorist because her liability limit was not less than the underinsured motorist limit under Allen's policy and (2) the anti-stacking provision was unambiguous and barred Allen from stacking the second $50,-000 under the policy.

The district court agreed with Transamerica that the language in the anti-stacking provision was clear and unambiguous. The district court noted that three Illinois courts had construed nearly identical language and found it to be unambiguous and enforceable, thereby preventing the insured from stacking coverage. *See Grzeszczak*, 168 Ill.2d at 224–25, 213 Ill.Dec. at 610–11, 659 N.E.2d at 956–57; *Frigo*, 271 Ill.App.3d at 64, 207 Ill.Dec. at 733, 648 N.E.2d at 189; *Obenland*, 234 Ill.App.3d at 107–08, 174 Ill. Dec. at 920, 599 N.E.2d at 1004. Despite these Illinois cases, however, the district court found itself constrained to grant summary judgment for Allen, finding that dicta in an Illinois Supreme Court decision controlled the case. *See Bruder v. Country Mutual Ins. Co.*, 156 Ill.2d 179, 189 Ill.Dec. 387, 620 N.E.2d 355 (1993). The policy in issue in *Bruder* for our purposes was a business automobile policy which covered two business trucks and contained an anti-stacking provision. The antistacking provision provided:

> The most we will pay for all damages resulting from bodily injury to any one person caused by any one accident is the limit of Bodily Injury shown in the declarations for "Each Person."

156 Ill.2d at 188, 189 Ill.Dec. at 392, 620 N.E.2d at 360. As in this case, the court in *Bruder* had to determine what was meant by the language "limit of Bodily Injury shown in the declarations." The Illinois Supreme Court attached a copy of the declarations sheet to its opinion in *Bruder*. That declarations sheet listed the amount of coverage only once, above the columns in the middle of the page, and did not repeat the amount in both columns as in this case. The *Bruder* Court analyzed the declarations sheet and stated:

> Understanding the arrangement of entries in the columns is important in determining the effect of what is not there included. Specifically, the limits of liability are not set out within the column arrangement in the same manner as the page lists the premium amounts and totals. That is, there is no column for which the limit of liability for bodily injury is to be listed like a premium amount so that the $100,000 limit for each person would appear in both sentence-like lines for the pickup trucks.
>
> *It would not be difficult to find an ambiguity created by such a listing of the bodily injury liability limit for each person insured. It could easily be interpreted that an insured should enjoy a total limit $200,000 in coverage because a figure of $100,000 would be shown for each pickup truck. There would be little to suggest in such a listing that the parties intended that coverage was to be limited to that provided for only one of the two pickup trucks. It would be more reasonable to assume that the parties intended that, in return for the two premiums, two $100,000 coverage amounts were afforded. See Squire v. Economy Fire & Casualty Co.*, 69 Ill.2d 167, 179–80, 13 Ill.Dec. 17, 22, 370 N.E.2d 1044, 1049 (1977) (holding that the existence of two declarations pages, both setting $10,000 limits for liability for each person, created an ambiguity permitting the aggregation of those coverage amounts).

*Bruder*, 156 Ill.2d at 192, 189 Ill.Dec. at 394, 620 N.E.2d at 362 (emphasis added).

In this case, the district court reasoned that because *Bruder* indicated that a policy such as the one at issue here could be found to be ambiguous, such an ambiguity must be resolved in favor of Allen and against Transamerica. This would enable Allen to stack the coverage and receive $100,000 in underinsured motorists' coverage. The district court was critical of this position, calling it "ludicrous" and labeling it a "windfall" for insureds with similar declaration pages. The district court invited insurers to draft declarations pages to avoid the *Bruder* ambiguity, but, nonetheless, granted Allen's motion for summary judgment. The district court also found that Transamerica was entitled to a $50,000 set-off from Allen's recovery from Houston's insurance company.

### 4. Analysis.

Transamerica argues that the district court erred as a matter of law in holding that Allen was entitled to stack underinsured motorists' coverage for each car under the policy because the antistacking provision was unambiguous and sufficient to prohibit stacking. Allen argues that the declarations sheet, read in conjunction with the anti-stacking clause, presents a latent ambiguity as described in the *Bruder* dicta and mandates a result in her favor.

 We review the district court's grant of summary judgment *de novo*. *National Soffit & Escutcheons, Inc. v. Superior Systems, Inc.*, 98 F.3d 262, 265 (7th Cir.1996). As a court sitting in diversity,[1] we apply the law of Illinois and attempt to predict how the Illinois Supreme Court would decide the issues presented here. *Smith v. Equitable Life Assurance Soc'y of the United States*, 67 F.3d 611, 615 (7th Cir.1995); *Thoele v. Aetna Cas. & Sur.*, 39 F.3d 724, 726 (7th Cir.1994). Where the Illinois Supreme Court has not ruled on an issue, decisions of the Illinois Appellate courts control, unless there are persuasive indications that the Illinois Su-

preme Court would decide the issue differently. *Clarin Corp. v. Massachusetts General Life Ins. Co.*, 44 F.3d 471, 474 (7th Cir. 1994) (citations omitted). Under Illinois law, the interpretation of an insurance policy is a question of law. *Employers Ins. of Wausau v. Bodi–Wachs Aviation Ins. Agency, Inc.*, 39 F.3d 138, 141–42 (7th Cir.1994) (citing *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill.2d 384, 391, 189 Ill.Dec. 756, 760, 620 N.E.2d 1073, 1077 (1993)). As when interpreting any insurance policy, we try to effectuate the parties' intent as expressed in the insurance contract, attributing to the policy's unambiguous words their plain and ordinary meaning. *Thoele*, 39 F.3d at 727 (citations omitted). "All the provisions of the insurance contract, rather than an isolated part, should be read in light of each other to determine whether an ambiguity exists." *FDIC v. American Cas. Co. of Reading*, 998 F.2d 404, 408 (7th Cir.1993) (quoting *Dash Messenger Serv., Inc. v. Hartford Ins. Co. of Ill.*, 221 Ill.App.3d 1007, 1010, 164 Ill.Dec. 313, 316, 582 N.E.2d 1257, 1260 (1st Dist.1991)). "All doubts and ambiguities must be resolved in favor of the insured." *Employers Ins. of Wausau*, 39 F.3d at 142 (quoting *United States Fidelity & Guar. Co. v. Wilkin Insulation Co.*, 144 Ill.2d 64, 74, 161 Ill.Dec. 280, 284, 578 N.E.2d 926, 930 (1991)).

 Allen agrees that the language of the antistacking clause, considered alone, is unambiguous. In Illinois, anti-stacking provisions in policies providing underinsured motorists' coverage are enforceable as written so long as they are unambiguous and do not violate public policy. *Grzeszczak*, 168 Ill.2d at 223, 213 Ill.Dec. at 610, 659 N.E.2d at 956 (citing *Menke v. Country Mutual Ins. Co.*, 78 Ill.2d 420, 423–24, 36 Ill.Dec. 698, 700, 401 N.E.2d 539, 541 (1980)). The district court pointed out three Illinois cases that have found such clauses unambiguous, and the parties have also pointed to several federal.

1. This is a proper diversity action under 28 U.S.C. § 1332. Allen is a citizen of Illinois and Transamerica is a California corporation with its principal place of business in Dallas, Texas. The amount in controversy exceeds $50,000, the amount required under § 1332 at the time the action was removed, because Allen sought a de-

claratory judgment that she was entitled to $100,000 in coverage. Pursuant to the Federal Courts Improvement Act of 1996, Pub.L. No. 104–317, § 205, the amount in controversy required for jurisdiction under § 1332 increased to $75,000 on January 17, 1997.

eral cases finding such clauses unambiguous. *See, e.g., Transamerica Ins. Co. v. Downen,* No. 94–CV–0906–PER (S.D.Ill. Aug. 16, 1995) (addressing the identical anti-stacking clause); *Johnson v. Safeco Ins. Co. of Am.,* 809 F.Supp. 602, 606–07 (N.D.Ill.1992), *aff'd. without opinion,* 9 F.3d 112 (7th Cir.1993). We, too, agree that the clause is unambiguous standing alone. If we were merely called upon to determine whether the clause alone must be enforced against Allen, we would surely find for Transamerica.

However, other than *Bruder,* none of the cases cited by the district court or the parties address the particular arrangement of the declarations page. Those cases primarily deal with multiple policies and a schedule that specifies the limit of the underinsured motorists' coverage. None of these cases, therefore, are on point. The *Bruder* dicta, on the other hand, addresses the precise factual scenario before us, in which we must consider the schedule in conjunction with the declarations page.

As a court sitting in diversity, we have a duty to attempt to predict the actions of the Illinois Supreme Court. Accordingly, we must pay close attention to the *Bruder* dicta, as it persuasively indicates how the Illinois Supreme Court would rule in this case and as it is dispositive of this issue. The *Bruder* dicta predicts that the Illinois Supreme Court would find the anti-stacking clause ambiguous when viewed in conjunction with the columnar arrangement of the declarations page, and would therefore rule in favor of coverage.

We therefore AFFIRM the district court's grant of summary judgment for Allen and against Transamerica. We also AFFIRM the district court's finding that Transamerica is entitled to a set-off of $50,000, the amount Allen received from Houston's insurance company.

COMPANY COPY

**TRANSURANCE FOR AUTOMOBILES**

**TRANSAMERICA INSURANCE COMPANY**

| RENEWAL NOTICE |
| --- |
| POLICY NUMBER: TRA 1348 85 89 ** |
| EFFECTIVE DATE: JAN. 16, 1994 |
| EXPIRATION DATE: JULY 16, 1994 |
| AT 12 01 A.M. STANDARD TIME AT THE INSURED'S ADDRESS |

FOR ADDITIONAL INFORMATION CONTACT 633205

PLEASE ATTACH THIS NOTICE TO YOUR POLICY

AGENCY 633205
ROBERTS INSURANCE AGENCY
210 E UNION ST
MARION, IL 62959

PHONE (618) 997-3354

NAMED INSURED 1348-85-89
ALFRED ALLEN
523 S MARKET
MARION IL 62959

COVERAGE IS PROVIDED WHERE A PREMIUM AND LIMIT OF LIABILITY ARE SHOWN FOR THE COVERAGE

S SYMBOL
A AGE
T TERRITORY

SEE REVERSE FOR ABBREVIATION DEFINITIONS.

*PER PERSON/PER ACCIDENT OR OCCURENCE PER POLICY PROVISION; 000 OMITTED

* ACTUAL CASH VALUE LESS DEDUCTIBLE (IF ANY)

ENDORSEMENTS APPLICABLE

OTHER GARAGING LOCATION

LIENHOLDERS OR ADDITIONAL INTERESTED PARTIES

**COVERAGES & LIMITS**

CHEV CAV V TP PONT GRAN TP

| | | | |
| --- | --- | --- | --- |
| BI LIAB | $50/100 | $50/100 | |
| PROP DAMAGE | $50,000 | $50,000 | |
| MED PAY | $5,000 | $5,000 | |
| UM/UNINS MOT | $50/100 | $50/100 | |
| O/T COLL | $50 DED | $50 DED | |
| COLL | $200 DED | $200 DED | |
| TOWING | $25.00 | $25.00 | |
| | PASS RSTR | | |

PREMIUM PER CAR $282 $294

PP01740391 PP03090486 PP03030486 12136B
213524 PP04010486 A18207
PP03210680 PP04020486 PP04470391
PRO PL END PP03050883 PP04050188

TOTAL SEMI-ANNUAL PREMIUM

$576

| MAILING DATE | PRIOR BALANCE | PRIOR ITEM CHANGES | CURRENT TERM | DATE OF CHANGE | PAYMENT REC'D |
| --- | --- | --- | --- | --- | --- |
| 12/17/93 | | | | | |

L1 E M BAKER CHEVROLET
PO BOX 279
MARION IL 62959

L2 GMAC
PO BOX 2288
CARBONDALE IL 62901

| TO PAY IN FULL |
| --- |
| $576.00 |

| MINIMUM NOW DUE |
| --- |
| ** $295.00 |

| PAYMENT DUE DATE |
| --- |
| JAN. 16, 1994 |

UPON PAYMENT OF PREMIUM WHEN DUE THIS POLICY WILL BE RENEWED FOR AN ADDITIONAL TERM.

** A SERVICE CHARGE OF $5.00 HAS BEEN INCLUDED IN THIS AMOUNT.

PSC F81-8681 10-8