*In re* ESTATE OF DILLON STRIPLIN, Deceased (Terry Striplin, Adm'r of the Estate of Dillon Striplin, Deceased, and as Parent of Corey Striplin *et al.*, Minors, *et al.*, Plaintiffs-Appellees, v. Allstate Insurance Company, Defendant-Appellant).

Second District No. 2—03—0252

Opinion filed April 13, 2004.

Steven M. Levy and Lisa M. Lilly, both of Sonnenschein, Nath & Rosenthal, of Chicago, for appellant.

Philip J. Ryan, of Ryan, Ryan & Landa, Ltd., of Waukegan, for appellees.

JUSTICE GROMETER delivered the opinion of the court:

Defendant, Allstate Insurance Company, appeals the trial court's order granting summary judgment to plaintiffs, Terry Striplin, as administrator of the estate of Dillon Striplin and as the parent of Corey Striplin, Denton Striplin, and Zachary Striplin; and Jason Striplin. The trial court held that plaintiffs could "stack" the underinsured

motorist coverages for two vehicles under a policy that defendant issued to Terry Striplin. Defendant argues that the trial court erred in holding that the arrangement of the policy's declarations pages—showing a separate liability limit for each vehicle insured—created an ambiguity that had to be resolved in favor of greater coverage. Defendant contends that the court should have enforced the policy's unambiguous antistacking provision. We agree, and therefore reverse.

Terry Striplin insured two vehicles, a Ford truck and a Ford van, under a policy that defendant issued. The policy contained two declarations pages, one for each vehicle. Each declarations page provided that the insured had uninsured motorist coverage of $100,000 per person and $300,000 per occurrence.

The policy's general provisions contained a paragraph entitled *"Combining Limits Of Two Or More Autos Prohibited."* This paragraph provided as follows:

> "The limits of liability applicable to any one *auto* shown on the policy declarations will not be combined with or added to the limits of liability applicable to any other *auto* shown on the policy declarations or covered by the policy, even though a separate premium is charged for each of those *autos* \*\*\*. \*\*\* If two or more *autos* are shown on the policy declarations and one of these *autos* is involved in the accident, the limits of liability shown on the policy declarations for the involved *auto* will apply. If none of the *autos* shown on the policy declarations is involved in the accident, the highest limits of liability shown on the policy declarations for any one *auto* will apply." (Emphasis in original.)

On January 12, 2002, Terry Striplin's son, Dillon Striplin, was riding in a vehicle driven and insured by Richard Miller. Miller drove negligently and ran into a tree. As a result, Dillon Striplin was killed. Under Miller's automobile insurance policy, plaintiffs collected $50,000, which was the policy limit. They then filed a claim for underinsured motorist benefits under Terry Striplin's policy. Defendant paid plaintiffs $50,000—the $100,000 coverage limit for one vehicle minus the $50,000 received from Miller's insurer. Plaintiffs claimed they could combine or "stack" the coverage limits for the two vehicles that defendant insured. When defendant refused to pay more, plaintiffs filed this action seeking a declaration that they were entitled to $150,000—the combined limit of $200,000 minus the $50,000 already received. Both parties moved for summary judgment.

The trial court agreed with plaintiffs that, under *Bruder v. Country Mutual Insurance Co.*, 156 Ill. 2d 179 (1993), the policy's multiple listings of liability limits on the declarations pages conflicted with the antistacking language in the general provisions. The court resolved the

ambiguity in favor of greater coverage for the insured. Accordingly, the court granted plaintiffs' summary judgment motion and denied defendant's motion. Defendant timely appeals.

Defendant argues that the trial court erred in holding that the policy is ambiguous. According to defendant, the statements in *Bruder* that the court relied on are *obiter dicta*, which are not binding on lower courts. Defendant points out that several supreme court cases have held that unambiguous antistacking clauses, such as that in defendant's policy, must be given effect. Defendant contends that merely listing the limits of liability for multiple insured vehicles separately, without more, does not negate the policy's clear antistacking language.

■ The construction of an insurance policy is a question of law subject to *de novo* review. *McKinney v. Allstate Insurance Co.*, 188 Ill. 2d 493, 497 (1999). The primary object of contract construction is to ascertain and give effect to the parties' intentions as expressed in their agreement. *American States Insurance Co. v. Koloms*, 177 Ill. 2d 473, 479 (1997). If the policy is clear and unambiguous, we must give the language its plain meaning. If terms are ambiguous, they should be construed against the insurer, which drafted the policy. *Koloms*, 177 Ill. 2d at 479. However, courts should not strain to find an ambiguity where none exists. *McKinney*, 188 Ill. 2d at 497.

■ Because of its central role in the trial court's decision and in the parties' arguments on appeal, we begin with a discussion of *Bruder*. There, Ruth Bruder was injured in an accident with two uninsured drivers. Among several insurance policies that provided coverage was a business auto policy covering two trucks owned by her husband, John Bruder. The Bruders attempted to stack the uninsured motorist coverage applicable to the two trucks. The policy contained a provision that unambiguously prohibited stacking coverages. *Bruder*, 156 Ill. 2d at 189. However, the Bruders contended that the layout of the declarations page, listing separately the premiums paid for each coverage for each truck, created an ambiguity. The court rejected this argument. It observed that, although the declarations page listed separate premiums for each truck, it showed only once the limits of liability applicable to both trucks. *Bruder*, 156 Ill. 2d at 192. The court continued as follows:

> "It would not be difficult to find an ambiguity created by such a listing of the bodily injury liability limit for each person insured. It could easily be interpreted that an insured should enjoy a total limit of $200,000 in coverage because a figure of $100,000 would be shown for each pickup truck. There would be little to suggest in such a listing that the parties intended that coverage was to be

limited to that provided for only one of the two pickup trucks. It would be more reasonable to assume that the parties intended that, in return for the two premiums, two $100,000 coverage amounts were afforded." *Bruder*, 156 Ill. 2d at 192.

How to interpret what has become known as the *Bruder dicta* has divided this state's appellate court ever since. The Fifth District had apparently taken the position that, regardless of antistacking language in the policy, any listing of multiple liability limits automatically creates an ambiguity that must be resolved in favor of the insured. See *Yates v. Farmers Auto Insurance Ass'n*, 311 Ill. App. 3d 797 (2000); *Pekin Insurance Co. v. Estate of Goben*, 303 Ill. App. 3d 639 (1999). In its most recent opinion, however, the Fifth District retreated from its previous position, holding that the presence of multiple liability limits, in combination with other language, *may* create an ambiguity. *Hall v. General Casualty Co. of Illinois*, 328 Ill. App. 3d 655, 660 (2002). In *Domin v. Shelby Insurance Co.*, 326 Ill. App. 3d 688 (2001), the First District expressed some doubt about the soundness of the *Bruder dicta* but did not consider the issue further because the policy there, like that in *Bruder*, contained only a single listing of the liability limits rather than a "confusing columnar arrangement." *Domin*, 326 Ill. App. 3d at 696-97. The Fourth District, without discussing *Bruder*, held that listing multiple liability limits on the declarations page did not create an ambiguity in the face of clear antistacking language elsewhere in the policy. *Pekin Insurance Co. v. Estate of Ritter*, 322 Ill. App. 3d 1004, 1005 (2001). Two federal courts have discussed the issue as well. See *Allen v. Transamerica Insurance Co.*, 128 F.3d 462 (7th Cir. 1997); *Moehring v. Allied Property & Casualty Insurance Co.*, No. 00—CV—4234—JPG (S.D. Ill. 2001).

Having considered these cases and their various rationales, we cannot accept a *per se* rule that any listing of multiple limits of liability creates an ambiguity. There are several reasons for this. First, such a holding would be inconsistent with later supreme court precedent. Two years after *Bruder*, the supreme court decided *Grzeszczak v. Illinois Farmers Insurance Co.*, 168 Ill. 2d 216 (1995), a case involving an attempt to stack underinsured motorist coverages under two separate policies. The court initially stated that antistacking clauses will be enforced as written if they are unambiguous and do not violate public policy. *Grzeszczak*, 168 Ill. 2d at 223. The court then held that clauses in both policies, stating that the " 'total limit' " of the defendant's liability under all policies would not exceed the highest applicable limit under any one policy, unambiguously prevented the insured from aggregating, or stacking, coverage under multiple policies. *Grzeszczak*, 168 Ill. 2d at 225. Although the court did not explicitly say so, because

*Grzeszczak* involved two separate policies, the only logical inference is that each policy included its own declarations page listing the liability limits for the vehicle covered by that policy. However, the court held that the antistacking provisions clearly prevented stacking the coverages in the separate policies. We see no meaningful distinction between two declarations pages attached to separate policies and, as is the case here, two declarations pages attached to the same policy.

The problem with a *per se* approach is further illustrated by the following example. Here, as in *Bruder*, the liability limits for the two covered vehicles are identical. However, if different limits applied to the two vehicles, under a broad reading of *Bruder*, defendant could *never* unambiguously prohibit stacking. The different coverage limits would have to be set out somewhere, and this would always trump an antistacking clause, no matter how clearly the latter was written. Nothing in *Bruder* suggests such a result.

Another problem with the *per se* approach is that, by focusing solely on the layout of the declarations page, it ignores the command that all portions of an insurance policy must be construed together. *Travelers Insurance Co. v. Eljer Manufacturing Co.*, 197 Ill. 2d 278, 292 (2001). Although seldom stated, the reason for this rule is obvious. Documents are written with the intention that they be read as a whole. A question left unanswered by one portion of the document may be answered quite clearly by another portion of it.

We agree with the cases holding that listings of multiple liability limits *may* create an ambiguity in conjunction with other language in the policy. In *Hall*, the court emphasized that "it is not the number of times the limit of liability is listed on the declarations page that creates the ambiguity in the case at bar." *Hall*, 328 Ill. App. 3d at 660. However, the court held that an ambiguity was present because the declarations page stated that " 'Insurance is provided where a premium is shown.' " *Hall*, 328 Ill. App. 3d at 660. Because multiple premiums were shown together, the declarations page could be reasonably construed to mean that the liability limit was provided for each vehicle, even though the policy listed the limits of liability only once. *Hall*, 328 Ill. App. 3d at 659.

In *Allen*, the court held that a policy's antistacking provision, when read in conjunction with the layout of the declarations page, created an ambiguity. *Allen*, 128 F.3d at 467. The antistacking provision at issue stated that "the limit of liability shown in the Schedule or in the Declarations for each accident for Underinsured Motorists Coverage is *our maximum limit of liability*" and was the most the defendant would pay regardless of the number of insureds, claims made, vehicles

or premiums shown in the declarations, or vehicles involved in the accident. (Emphasis in original.) *Allen*, 128 F.3d at 464. The declarations page contained four columns, showing premiums paid and coverage amounts for each of two vehicles. *Allen*, 128 F.3d at 468.

Significantly, the *Allen* court stated that the central question it had to answer was, "[W]hat is the *limit of liability* referred to in the provision?" (Emphasis in original.) *Allen*, 128 F.3d at 464. Relying on *Bruder*, the court held that the Illinois Supreme Court would find the policy ambiguous concerning stacking because the "limit of liability" referred to in the antistacking clause could mean the limits of liability for either vehicle or for both combined. *Allen*, 128 F.3d at 467.

The policy here does not contain any of the language that made the policies in *Hall* and *Allen* ambiguous. The declarations pages do not contain a statement that coverage is provided where a premium is shown. The pages merely state "COVERAGE FOR VEHICLE #1" and "COVERAGE FOR VEHICLE #2."

Moreover, the "Combining Limits Of Two Or More Autos Prohibited" section does not merely refer to the "limits of liability" in the declarations pages, as in *Allen*. The section specifically provides that "The limits of liability applicable to any one *auto* shown on the policy declarations will not be combined with or added to the limits of liability applicable to any other *auto* shown on the policy declarations." (Emphasis in original.) Moreover, the provision goes on to explain what happens in the precise situation that occurred here: "If none of the *autos* shown on the policy declarations is involved in the accident, the highest limits of liability shown on the policy declarations for any one *auto* will apply." (Emphasis in original.) In *Allen*, it was the failure of the antistacking clause to define "limits of liability" that led to the finding that the policy was ambiguous. Here, the "Combining Limits Of Two Or More Autos Prohibited" section specifically answers that question. It specifically states what happens where, as here, an insured has an accident involving neither of the two autos insured. The antistacking clause simply is not ambiguous when read in conjunction with the declarations pages.

In *Pekin Insurance Co. v. Estate of Ritter*, 322 Ill. App. 3d 1004 (2001), the court was faced with a policy similar to the one at issue here. The court observed that "[t]he entries in the columns on the declaration page in this policy do nothing more than indicate the amount of coverage provided for each vehicle and the amount of the total premium allotted to that coverage." *Pekin*, 322 Ill. App. 3d at 1005. The court went on to explain, "To the extent that there could be some confusion arising out of whether the coverages could be 'stacked,' the UIM coverage limitation provision clarifies that question." *Pekin*, 322 Ill. App. 3d at 1005.

We agree with this analysis. Any provision of a lengthy document is bound to be ambiguous in the sense that it creates questions that can be answered only with reference to other portions of the document. That is why all provisions of an insurance policy must be construed together. Here, the declarations pages arguably leave open the question whether the liability limits for the two vehicles may be added together in a case where neither of the vehicles is involved in the accident. However, the "Combining Limits Of Two Or More Autos Prohibited" section provides the answer: they may not.

Plaintiffs raise several additional arguments that the policy is ambiguous. Plaintiffs complain that the policy's general provisions state that "A coverage applies only when a premium for it is shown on the policy declarations." However, the "Combining Limits Of Two Or More Autos Prohibited" section clearly provides that coverages may not be combined, "even though a separate premium is charged for each of those *autos*." (Emphasis in original.) Thus, the ambiguity found in *Hall* is not present here.

Plaintiffs next argue that the policy's definition of "underinsured motor vehicle" is confusing. The policy defines an underinsured motor vehicle as a vehicle that has liability coverage "but less than the applicable limit of liability for Coverage SS shown on *your* policy declarations." (Emphasis in original.) Plaintiffs correctly point out that the declarations pages do not refer to coverage SS, but to "Uninsured Motorists Insurance," which includes "Underinsured Motorists Protection." However, part 5 of the policy, in which the above-quoted definition appears, is entitled "Uninsured Motorists Insurance Coverage SS." That the declarations pages use only one of two terms that are obviously intended to be equivalent does not mean that plaintiffs can stack the coverages applicable to both vehicles. The rest of plaintiffs' argument on this point restates that the declarations pages are ambiguous because they set forth the limits of liability multiple times.

Plaintiffs next contend that the antistacking clause is ambiguous because it refers to "the limits of liability applicable to any one auto" rather than "the policy limits for one vehicle insured." Plaintiffs appear to contend that this could be read as referring only to liability coverage, not underinsured motorist coverage. *Grzeszczak* rejected a similar argument. The court held that a clause providing that " 'the total limit of liability under all the policies shall not exceed the highest applicable limit of liability under any one policy' " unambiguously prohibited stacking underinsured motorist coverages. *Grzeszczak*, 168 Ill. 2d at 220-21, 224-25. Further, in *Allstate Insurance Co. v. Gonzalez-Loya*, 226 Ill. App. 3d 446, 452-53 (1992), the court held that virtually

identical language in Allstate's policies unambiguously prohibited stacking. Plaintiffs provide no persuasive reasons to depart from these holdings.

Plaintiffs finally contend that the antistacking language in the "Limits of Liability" provisions of part 5 is ambiguous. However, we have already held that the "Combining Limits Of Two Or More Autos Prohibited" section unambiguously prohibits stacking. In the absence of a direct conflict between the two, that the policy contains a second antistacking provision that is arguably less clear does not render the first antistacking provision ambiguous.

The judgment of the circuit court of Lake County is reversed.

Reversed.

O'MALLEY, P.J., and CALLUM, J., concur.