BETTIE JO OBENLAND *et al.*, Plaintiffs-Appellants, v. ECONOMY FIRE AND CASUALTY COMPANY, Defendant-Appellee (Milwaukee Guardian Insurance Company, Defendant-Appellee and Cross-Appellant).

First District (4th Division) Nos. 1—90—3641, 1—91—0888 cons.

Opinion filed June 30, 1992.

Edward M. Burnes, of Isadore M. Bernstein, Ltd., of Chicago, for appellants.

Williams & Montgomery, Ltd., of Chicago (James K. Horstman, Barry L. Kroll, and Lloyd E. Williams, Jr., of counsel), for appellee Economy Fire & Casualty Company.

McKenna, Storer, Rowe, White & Farrug, of Chicago (James P. DeNardo, Richard M. Clark, and Christine L. Olson, of counsel), for appellee Milwaukee Guardian Insurance Company.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

These consolidated appeals stem from a declaratory judgment action brought by the plaintiffs, Bettie Jo Obenland and John F. Obenland, to construe the limits of underinsured motorist coverage contained in insurance policies issued to the plaintiffs by the defendants, Milwaukee Guardian Insurance Company (Milwaukee) and Economy Fire & Casualty Company (Economy). The Milwaukee policy insured three vehicles and charged a premium of $15[1] for underinsured motorist coverage limits of $300,000 each person/$300,000 each accident. The Economy policy insured one vehicle and provided a single underinsured motorist coverage limit of $300,000 per accident.

---

[1]Although the policy showed only one premium of $15, the plaintiffs alleged that they were charged three $5 premiums, one for each vehicle.

The plaintiffs were injured as pedestrians by a motorist whose insurance company tendered its policy limits of $100,000 per person. The plaintiffs then sought a declaration that because of alleged ambiguities in the Milwaukee policy and the payment of three identical premiums, they were entitled to receive $300,000 per person of underinsured motorist coverage for each of the three cars insured by Milwaukee. They also sought the $300,000 coverage limit from Economy for a combined total of $2.1 million in coverage. The plaintiffs asked the court to declare that the amounts paid by Milwaukee and Economy were not to be shared proportionately pursuant to the policies' "other insurance" clauses as long as the plaintiffs did not recover more than the amount of their damages. They subsequently filed an amended complaint alleging a cause of action against Milwaukee based on the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1989, ch. 121½, par. 261 *et seq.*).

On cross-motions for summary judgment, the trial court ruled that the plaintiffs were not entitled to "stack" the coverages under the Milwaukee policy and that the plaintiffs were entitled to a maximum coverage of $300,000 less the $200,000 paid by the underinsured motorist's insurer. The remaining $100,000 would be shared proportionately by Milwaukee and Economy, resulting in $50,000 of coverage from Milwaukee and $50,000 of coverage from Economy. On the plaintiffs' motion for reconsideration, the trial court stated that Milwaukee's limits of liability provision was ambiguous and that the plaintiffs should accordingly be entitled to $300,000 of coverage per person notwithstanding the policy limit of $300,000 per accident. The court then declared that Milwaukee's coverage limit was $350,000 and that Economy owed $50,000. The court dismissed the Consumer Fraud Act counts for failure to state a cause of action.

On appeal, the plaintiffs contend that the Milwaukee policy does not unambiguously preclude the stacking of underinsured motorist coverages. They further contend that, in the absence of a double recovery to the plaintiffs, neither the amounts paid by the underinsured motorist nor the coverage afforded by Economy pursuant to its policy should serve to reduce the limits of Milwaukee's coverage. Similarly, the plaintiffs contend that Economy owes the full amount of its underinsured motorist coverage without regard to the amounts paid by the underinsured motorist or the coverage owed by Milwaukee under its policy. The plaintiffs further contend that the trial court erred in dismissing the Consumer Fraud Act counts for failure to state a cause of action. Milwaukee has cross-appealed, contending that its policy unambiguously limits the amount of underinsured motorist cover-

age to $300,000 for a single accident regardless of the number of persons injured. Thus, Milwaukee claims that it owes the plaintiffs $50,000 in coverage rather than the $350,000 as declared by the trial court.

At the time of the accident, the plaintiffs had underinsured motorist coverage under two insurance policies, one from Milwaukee and the other from Economy. The Milwaukee policy, as renewed on September 26, 1986, insured three cars and showed a $15 premium for underinsured motorist coverage. The declarations page of the policy indicated that the policy limits for underinsured motorist coverage were "$300,000 each person/$300,000 each accident." The Milwaukee policy contains three clauses that are particularly significant to this appeal. The first is a "limits of liability" clause for uninsured and underinsured motorist coverage that provides in pertinent part:

"The limits of liability shown in the Declarations [$300,000 each person/$300,000 each accident] apply subject to the following:

(1) The limit for 'each person' is the maximum for bodily injury sustained by any person in any one accident.

(2) Subject to the limit for 'each person,' the limit for 'each accident' is the maximum for bodily injury sustained by two or more persons in any one accident.

We will pay no more than these maximums regardless of the number of vehicles described in the Declarations, insured persons, claims, claimants, policies, or vehicles involved in the accident.

Any amounts payable will be reduced by:

(1) All payments made by the owner or operator of the uninsured motor vehicle or organization which may be legally liable."

The limits of liability clause was revised in July of 1986 but not issued to policyholders in its new form until 1987. In its revised form, the clause provides in part that "[w]e will pay no more than these maximums regardless of the number of vehicles described or *premiums shown* in the Declarations, insured persons, claims, claimants, policies, or vehicles involved in the accident. *It is the intent of this paragraph not to allow stacking of the limit of liability under this coverage.*" (Emphasis added to indicate revisions.)

The second clause at issue is the underinsured motorist endorsement, which provides in part:

"The limits of liability for underinsured motorist coverage *** shall be reduced by the sum of the limits of liability for all bodily injury liability bonds and insurance policies which apply to the underinsured automobile."

Third, the Milwaukee policy contains an "other insurance" clause which provides as follows:

"If there is other applicable uninsured motorist insurance on a loss covered by this Part, we will pay our proportionate share as our limit of liability bears to the total of all applicable limits. But any insurance for a vehicle you do not own is excess over any other applicable uninsured motorist insurance."

The policy made this last clause applicable to underinsured as well as uninsured motorist coverage.

The Economy policy, issued September 19, 1986, provides a single underinsured motorist coverage limit of $300,000 "each accident." The uninsured motorist coverage amendatory endorsement, which confers both uninsured and underinsured motorist coverage, contains a "limit of liability" clause that provides in pertinent part:

"The limit of liability shown in the Declarations for Uninsured Motorists Coverage [$300,000 each accident] is our maximum limit of liability for all damages for bodily injury resulting from any one accident.

***

This is the most we will pay regardless of the number of covered persons, claims made, vehicles or premiums shown in the Declarations, or vehicles involved in the accident.

Any amounts otherwise payable for damages under this coverage shall be reduced by all sums: Paid because of the bodily injury or property damage by or on behalf of persons or organizations who may be legally responsible."

The Economy policy also contains an "other insurance" clause which provides in pertinent part:

"[I]f the insured has other similar insurance available to him and applicable to the accident *** the Company shall not be liable for a greater proportion of any loss to which this coverage applies than the limit of liability hereunder bears to the sum of the applicable limits of liability of this insurance and such other insurance ***."

Before addressing the specific issues raised in this appeal, we will briefly examine the nature of underinsured motorist coverage and the statutory provisions in effect during the relevant time period.

Section 143a—2(3) of the Illinois Insurance Code (Code) defines an underinsured motor vehicle as one which has resulted in bodily injury or death to the insured, and for which "the sum of the limits of liability under all bodily injury liability insurance policies or under bonds or other security" maintained by the person responsible for the vehicle is less than the limits of underinsured coverage provided the insured under his policy at the time of the accident. (Ill. Rev. Stat. 1985, ch. 73, par. 755a—2(3).) The statute then states that the liability of an insurer providing underinsured motorist coverage "shall be the limits of such coverage, less those amounts actually recovered under the applicable bodily injury insurance policies, bonds or other security maintained on the underinsured motor vehicle." (Ill. Rev. Stat. 1985, ch. 73, par. 755a—2(3).) Significantly, section 143a—2(6) allows an insurer to include policy language prohibiting stacking. Section 143a—2(6) provides as follows:

"Scope. Nothing herein shall prohibit an insurer from setting forth policy terms and conditions which provide that if the insured has coverage available under this Section under more than one policy or provision of coverage, any recovery or benefits may be equal to, but may not exceed, the higher of the applicable limits of the respective coverage, and the limits of liability under this Section shall not be increased because of multiple motor vehicles covered under the same policy of insurance." Ill. Rev. Stat. 1985, ch. 73, par. 755a—2(6).

In the recently decided case of *Sulser v. Country Mutual Insurance Co.* (1992), 147 Ill. 2d 548, 591 N.E.2d 427, the Illinois Supreme Court stated that the intent of the legislature in providing for underinsured motorist coverage was to place the insured in the same position he would have occupied had he been injured by a motorist who carried liability insurance in the same amount as the policyholder. In determining legislative intent, the court in *Sulser* considered the following statements made by Representative Telcser, a sponsor of the underinsured motorist coverage bill:

"The Amendment deals with technical problems that came up regarding an underinsured motorist. As an example: If a loss occurs, the motorist is underinsured, we wanted to be sure that the language set forth that the difference between the claim and the underinsured would be taken care of by your own insurance policy to fill the gap between the claim and the amount available from the underinsured and that there would not be any excessive claim that could be made." (81st Ill. Gen. Assem., House Proceedings, June 20, 1980, at 44-45.)

The supreme court then stated that "[a] provision designed to offer insurance to 'fill the gap' between the claim and the tortfeasor's insurance was obviously not intended to allow the insured to recover amounts from the insurer over and above the coverage provided by the underinsured motorist policy. \*\*\* When the insured opts for $100,000 in coverage against either uninsured or underinsured motorist risks, he is assured of receiving no more than that amount." (*Sulser*, 147 Ill. 2d at 556-57, 591 N.E.2d at 430.) The court in *Sulser* held that an insurer could reduce payments due to an insured under uninsured motorist coverage by the amount of workers' compensation benefits received by the insured, even where the offset reduced the insurer's obligation under the policy to zero. In doing so, the court rejected arguments that the reduction was against public policy and that the policyholder would not be receiving the compensation paid for by the underinsured motorist premium.

In this appeal, the plaintiffs first contend that neither the "other insurance" nor "limits of liability" clauses in Milwaukee's policy unambiguously preclude stacking. Milwaukee responds that the "other insurance" clause is irrelevant to the issue of stacking, but that the "limits of liability" provision clearly and unambiguously prohibits the stacking of underinsured motorist coverages. As quoted earlier, the limits of liability provision states that the $300,000 each person/ $300,000 each accident policy limits are the most Milwaukee will pay regardless of the number of vehicles described in the declarations, insured persons, claims, claimants, policies or vehicles involved in the accident.

■ The plaintiffs make two specific arguments in support of their contention that the limits of liability clause is ambiguous with respect to stacking. First, they argue that subsequent revisions to the clause which stated explicitly that the intent of the clause was to prohibit stacking regardless of the number of premiums paid constituted an admission that the original was ambiguous. The trial court found, we believe correctly, that the later revisions were irrelevant to whether the clause as originally written was ambiguous. The issue before us is whether the limits of liability clause in the plaintiffs' policy clearly and unambiguously prohibited stacking. In our view, it would be unfair and unwise to hold that an attempt by an insurance company to improve the language contained in its policy constituted an admission that the original language was ambiguous. We believe that policy language stating that the limits shown in the declarations were the most the company would pay regardless of the number of claims made, pol-

icies held or vehicles involved in the accident clearly and unambiguously precludes stacking.

The second argument concerning the limits of liability clause centers on the fact that the plaintiffs paid three separate premiums for underinsured motorist coverage. The plaintiffs argue that the payment of three premiums indicates that they must have intended to receive three separate coverages. This same argument was rejected by the supreme court in *Menke v. Country Mutual Insurance Co.* (1980), 78 Ill. 2d 420, 401 N.E.2d 539, in the context of uninsured motorist coverage. There, the court held that the existence of any such subjective intent on the part of the plaintiff was rebutted by the clear and unambiguous policy language limiting coverage. The *Menke* court then made the following comments concerning the argument that the prohibition against stacking was against public policy:

"Nor is public policy contravened by the fact that plaintiff paid premiums for each of the uninsured motorist provisions. Plaintiff agreed to the unambiguous limitations on coverage. *** Plaintiff concedes that it was reasonable to charge him something for the administrative work in writing the additional coverage and agrees that he has received some additional coverage for passengers who are not members of his household and would therefore not be covered by the original policy. There is no evidence of overreaching on the part of defendant, the premiums charged were not exorbitant, and, in short, no reason is advanced which would require invalidation of the limitation clause on public policy grounds. Public policy does not require invalidation of clearly written provisions simply to avoid disappointment to the insured." (*Menke*, 78 Ill. 2d at 425-26, 401 N.E.2d at 542.)

This court in *Sharples v. General Casualty Co.* (1980), 85 Ill. App. 3d 899, 902, 407 N.E.2d 674, followed *Menke* and stated that the payment of multiple premiums was of no consequence where the intent of the parties was manifested in the clear and unambiguous language of an antistacking provision.

The plaintiffs attempt to distinguish *Menke* on the grounds that the premiums for uninsured motorist coverage on the two additional vehicles were lower than the premiums on the first vehicle. The plaintiffs note that in Illinois, underinsured motorist coverage follows the named insured and his family members and protects them regardless of where they are when injured. Therefore, the additional premiums on the other two cars would afford coverage for nonfamily member occupants of those vehicles but would afford no additional protection

for the plaintiffs. The plaintiffs argue that where three equal premiums are paid, even express language in the policy should not be held to prevent stacking.

■ We do not believe that the decision in *Menke* can be properly distinguished on the basis of whether the premiums were identical or reduced for the two additional coverages. Although the premiums charged in *Menke* were not identical, the dissent points out that the reductions were based on the length of time the plaintiff held each policy without making a claim rather than on any difference in coverage afforded under the policies. (*Menke*, 78 Ill. 2d at 431, 401 N.E.2d at 545 (Clark, J., dissenting).) The majority does not cite the difference in the premiums as a basis for its decision that public policy was not contravened by prohibiting stacking even where separate premiums were charged for each coverage. We believe that *Menke* is directly on point and requires the rejection of the plaintiffs' argument that they should be allowed to stack coverages despite clear policy language to the contrary.

The plaintiffs, however, cite the recent supreme court decision in *Hoglund v. State Farm Mutual Automobile Insurance Co.* (1992), 148 Ill. 2d 272, to support their argument that the payment of separate premiums for each car created a latent ambiguity as to whether or not the coverages may be stacked. In each of the consolidated cases considered in *Hoglund*, the insured was injured in part by an uninsured motorist and in part by an insured motorist. The insured motorist in *Hoglund* had a bodily injury policy limit of $100,000 which was paid to the plaintiff. The plaintiff-insured had a policy with State Farm which provided an uninsured motorist coverage limit of $100,000. The insured claimed that her damages exceeded $200,000. The State Farm policy contained a setoff provision stating that amounts payable under its coverage would be reduced by any amounts paid or payable to the insured "by or for any person or organization who is or may be held legally liable for the bodily injury to the insured." (*Hoglund*, 148 Ill. 2d at 275.) Section 143a(4) of the Code provided that the insurer making a payment under its uninsured motorist coverage was entitled, to the extent of the payment, to the proceeds of any settlement or judgment "resulting from the exercise of any rights of recovery *** against any person or organization legally responsible." Ill. Rev. Stat. 1985, ch. 73, par. 755a(4).

Relying upon its policy language and the above Code provisions, State Farm argued that because the insured had received $100,000 from a legally liable party, State Farm was entitled to reduce its cov-

erage by the $100,000 payment and therefore owed the insured nothing.

The supreme court rejected State Farm's argument, stating that the public policy behind the uninsured motorist statute is to place the injured party in substantially the same position he would be in if the uninsured driver had been insured. The court explained:

"If the position of State Farm were to be adopted *** this purpose would be frustrated. If, for instance, the uninsured motorcycle driver had been insured for $100,000, Miss Hoglund could have collected that sum in full from that driver's insurer, along with the $100,000 she collected from the other insured driver. The separate collections of $100,000 from each of the two culpable drivers would have fully compensated her for her $200,000 in damages. State Farm's position, however, is to insist that it receive a full setoff for the payment made on behalf of the insured driver. Such a result would violate the public policy behind the uninsured motorist statute that the injured party be placed in the same position as if the uninsured driver had been insured." (*Hoglund*, 148 Ill. 2d at 280.)

The court then held that State Farm was entitled to a setoff only to the extent necessary to prevent a double recovery. In doing so, it stated specifically that it was "significant" that the insured was injured in part by an uninsured motorist and in part by an insured motorist. (*Hoglund*, 148 Ill. 2d at 280.) The court further stated that its holding was in accord with other jurisdictions, citing *Raitt v. National Grange Mutual Insurance Co.* (1971), 111 N.H. 397, 285 A.2d 799, and *Harthcock v. State Farm Mutual Automobile Insurance Co.* (Miss. 1971), 248 So. 2d 456. Both *Raitt* and *Harthcock* involved situations where the insured was injured in part by an uninsured motorist and in part by an insured motorist.

■ In the case at bar, the plaintiffs were injured by a single underinsured motorist. The plaintiffs had underinsured motorist coverage limits of $300,000 each person/$300,000 each accident. The underinsured motorist's insurer paid its policy limits of $200,000. As stated by the supreme court in *Sulser v. Country Mutual Insurance Co.* (1992), 147 Ill. 2d 548, 591 N.E.2d 427, underinsured motorist coverage is designed to "fill the gap" between the amount of the tortfeasor's insurance and the amount of underinsured motorist coverage the insured opted to buy. Here, had the plaintiffs been injured by a motorist who carried bodily injury liability insurance equal to the plaintiffs' underinsured motorist coverage, they would have received a total of $300,000. Applying the antistacking and setoff provisions in

the case at bar results in the plaintiffs receiving $200,000 from the underinsured motorist's insurer and $100,000 from the plaintiffs' underinsured motorist coverage for a total of $300,000. Therefore, unlike the situation in *Hoglund*, application of the policy provisions in the case at bar does not result in the plaintiffs being in a worse position than they would have been in had the underinsured motorist been adequately insured. We conclude that the holding in *Hoglund* is distinguishable from the case at bar and does not require us to find that the antistacking and setoff provisions in the policy violate the public policy behind the underinsured motorist statute.

The plaintiffs contend, however, that the rationale employed by the court in *Hoglund* supports their argument that the payment of three separate premiums disclosed a latent ambiguity in the policy as to whether the coverages could be stacked. They maintain that the *Hoglund* court reasoned that the payment of a premium for $100,000 of uninsured motorist coverage created a reasonable expectation by the insured that he would receive the full $100,000 in coverage despite policy language providing for a setoff of amounts paid by an insured tortfeasor. It is true that *Hoglund* relied upon the reasonable expectations of the insured as one of the factors disclosing a latent ambiguity in the policy. However, the court stated that the policy "must also be read in conjunction with the public policy behind the uninsured motorist statute and *** with reference to the facts of the case at hand." *Hoglund*, 148 Ill. 2d at 279.

We do not believe that *Hoglund* can be properly interpreted to stand for the proposition that the payment of a premium will in all cases create in the insured a reasonable expectation that he will receive the full amount of coverage stated in the policy despite clear policy language providing for setoffs and prohibiting stacking. Were we to accept the interpretation of *Hoglund* advanced by the plaintiffs, we would have to conclude that the supreme court in effect overruled its earlier decision in *Menke v. Country Mutual Insurance Co.* (1980), 78 Ill. 2d 420, 401 N.E.2d 539. In summary, we believe that *Hoglund* addressed a situation very different from the one before us and does not support the plaintiffs' contention that they should be allowed to stack their underinsured motorist coverages.

The plaintiffs next contend that the provision in Milwaukee's policy stating that amounts paid by the underinsured motorist's insurer will reduce the amounts payable under Milwaukee's underinsured motorist coverage should not be enforced. The plaintiffs argue that the policy provision allowing such a reduction is too inconspicuous and confusing to be enforced. As stated earlier, the underinsured motorist

endorsement provides that "[t]he limits of liability for underinsured motorist coverage *** shall be reduced by the sum of the limits of liability for all bodily injury liability bonds and insurance policies which apply to the underinsured automobile." The limits of liability clause provides in part that "[a]ny amounts payable will be reduced by: (1) [a]ll payments made by the owner or operator of the uninsured motor vehicle or organization which may be legally liable." The underinsured motorist endorsement made the limits of liability clause applicable to the underinsured motorist coverage.

 The plaintiffs maintain that the policy necessitates repeated cross-checking and is difficult, if not impossible, for a person unskilled in insurance matters to understand. In making this argument, the plaintiffs refer to the policy index, a definitions page, a note of appreciation page, policy riders, the declarations page, the policy provisions quoted above and the Insurance Code. The plaintiffs cite *Harhen v. State Farm Mutual Automobile Insurance Co.* (1978), 61 Ill. App. 3d 388, 377 N.E.2d 1178, as support for their argument that the policy provisions in question should not be enforced. While the court in *Harhen* did note that the wording of the policy might prove difficult for a person unskilled in insurance matters, it is clear that the court did not reverse the cause on that basis. Moreover, we find no confusion in the policy language which allows Milwaukee to reduce its coverage by $200,000, the amount paid by the underinsured motorist's insurer.

The plaintiffs next contend that the trial court erred in interpreting Economy's policy as providing for $300,000 in coverage, reduced by $200,000 from the underinsured motorist's insurer and paid proportionately with Milwaukee for a total coverage of $50,000. The plaintiffs maintain that Economy's $300,000 each accident underinsured motorist coverage limit should be interpreted as meaning that Economy will pay until each plaintiff has received a total of $300,000 from Economy and the tortfeasor or until Economy itself has paid out $300,000. The plaintiffs argue that the trial court's interpretation is erroneous because it will almost always result in a situation where two seriously injured insureds will receive less than one seriously injured insured. The plaintiffs also argue that under the trial court's interpretation, the amounts payable by Economy may depend on the order in which the plaintiffs bring their claims and that Economy will never be required to pay the full $300,000. Finally, the plaintiffs argue that the trial court's interpretation of the policy violates the public policy behind the statute requiring insurers to provide underinsured motorist coverage.

■ We believe that these arguments are based in large part on a misunderstanding as to the nature of underinsured motorist coverage. As stated very recently by our supreme court in *Sulser v. Country Mutual Insurance Co.* (1992), 147 Ill. 2d 548, 591 N.E.2d 427, underinsured motorist coverage was intended to fill the gap between the claim and the tortfeasor's insurance and was not intended to allow the insured to recover more than the amount of coverage provided under his policy's underinsured motorist coverage. Significantly, the court gave the following example:

> "Under a $100,000 policy, the policyholder is assured of compensation for his injuries in the amount of $100,000. However, the policyholder is not necessarily assured of receiving the total $100,000 from the insurer, but only of receiving that portion of the $100,000 which is not recovered from third parties." (*Sulser*, 147 Ill. 2d at 556, 591 N.E.2d at 430.)

The Economy policy clearly and unambiguously provides policy limits of $300,000 each accident, reduced by the amounts paid on behalf of the tortfeasor. As stated in *Menke v. Country Mutual Insurance Co.* (1980), 78 Ill. 2d 420, 426, 401 N.E.2d 539, public policy does not require us to invalidate clearly written policy language simply to avoid disappointment to the insured.

In their reply brief, the plaintiffs argue that the uninsured motorist statute (Ill. Rev. Stat. 1985, ch. 73, pars. 755a—2(1), (4)) and the liability limits statute (Ill. Rev. Stat. 1985, ch. 95½, par. 7—203) require that every insurance policy contain both "each person" and "each accident" limits. They assert that because the Economy policy would pay up to $300,000 to a single insured, the "each person" limit should be implied to be $300,000.

■ Supreme Court Rule 341(g) (134 Ill. 2d R. 341(g)) prohibits a party from raising new matters by way of a reply brief. Having failed to make this argument in their original brief, we believe that the plaintiffs have waived it for purposes of this appeal. *In re Marriage of Lawrence* (1986), 146 Ill. App. 3d 307, 311, 496 N.E.2d 538.

The plaintiffs next contend that the "other insurance" clauses in the Milwaukee and Economy policies should apply only to prevent the plaintiffs from recovering more than their actual damages. They argue that applying the other insurance clauses in a situation where there is no double recovery violates the public policy in favor of encouraging full protection of innocent persons against uninsured and financially irresponsible motorists.

■ Essentially, the "other insurance" clauses provide that if the insured has other insurance applicable to the loss, the company

will pay only its *pro rata* share of the loss. In *Morelock v. Millers' Mutual Insurance Association* (1971), 49 Ill. 2d 234, 274 N.E.2d 1, the supreme court rejected the argument that such clauses violate public policy. The court stated as follows:

> " 'The question of public policy, it seems to us, is largely manufactured. Construing an insurance contract accurately and giving it the effect which its language clearly commands, is not *ipso facto* a breach of public policy merely because it disappoints the innocent victim of an uninsured motorist.' *** [W]e prefer the view that the legislature's intent in requiring uninsured motorists insurance is satisfied by coverage which assures that compensation is available, in the event of injury by an uninsured motorist, to at least the same extent compensation 'is available for injury by a motorist who is insured in compliance with the Financial Responsibility Law.' " (*Morelock*, 49 Ill. 2d at 238-39, 274 N.E.2d at 3, quoting *Putnam v. New Amsterdam Casualty Co.* (1970), 48 Ill. 2d 71, 89, 269 N.E.2d 97.)

We accordingly reject the plaintiffs' argument that the "other insurance" clauses are violative of public policy.

The plaintiffs next contend that the trial court erred in dismissing the Consumer Fraud Act counts against Milwaukee for failure to state a cause of action.

Section 2 of the Consumer Fraud Act provides in pertinent part:

> "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act', approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby." (Ill. Rev. Stat. 1989, ch. 121½, par. 262.)

In order to establish a violation of the Consumer Fraud Act, the plaintiffs must allege misrepresentation, concealment or omission of a material fact by the defendant with the intent that the plaintiffs rely on such conduct. *Kostur v. Indiana Insurance Co.* (1989), 192 Ill. App. 3d 859, 867, 549 N.E.2d 685.

■ In the case at bar, the plaintiffs allege that Milwaukee's action in prohibiting stacking of the three underinsured motorist coverages even though it collected a separate premium for each constituted a violation of the Act. They also allege that Milwaukee violated the Act by charging plaintiff John F. Obenland a full premium for underinsured motorist coverage despite the fact that he had underinsured motorist coverage pursuant to his policy with Economy. However, as stated above, the language in the Milwaukee policy clearly and unambiguously set forth the type and amount of coverage purchased by the plaintiffs. The Insurance Code specifically allows an insurance company to include language prohibiting stacking of underinsured motorist coverage. (Ill. Rev. Stat. 1985, ch. 73, par. 755a—2(6).) We believe that the plaintiffs have failed to allege any unfair or deceptive act which would bring Milwaukee's conduct within the purview of the Consumer Fraud Act.

In its cross-appeal, Milwaukee contends that the court erred in ruling that paragraph 2 of its limits of liability provision was ambiguous and in accordingly awarding $300,000 of coverage to each plaintiff.

The policy provides:

"The limits of liability shown in the Declarations [$300,000 each person/$300,000 each accident] apply subject to the following:

(1) The limit for 'each person' is the maximum for bodily injury sustained by any person in any one accident.

(2) Subject to the limit for 'each person,' the limit for 'each accident' is the maximum for bodily injury sustained by two or more persons in any one accident."

The trial court found that paragraph 2 is ambiguous and "could be construed to read that the accident portion of the policy under the cover page would provide an additional $300,000.00 in the event that there was more than one person injured in an accident, one or more persons injured in an accident." The court then found that Milwaukee was liable for up to $600,000 in coverage.

■ We believe that the interpretation adopted by the trial court ignores the clear language of the policy which limits Milwaukee's coverage to $300,000 for a single accident. By stating that the each-accident limit is subject to the each-person limit, Milwaukee is stating that it will not pay any one person more than the each-person limit regardless of the each-accident limit. In the case at bar, where the each-person limit is equal to the each-accident limit, the language subjecting one limit to the other is not significant. However, in a situa-

tion where the each-person limit is less than the each-accident limit, *i.e.*, $100,000 each person/$300,000 each accident, the insurer is stating that it will pay no more than $100,000 to any one person injured in the accident, despite the each-accident limit of $300,000. We find no ambiguity in this provision and find that the policy provided for a maximum coverage of $300,000. Reduced by the $200,000 payment by the underinsured motorist's insurer, and paid proportionately with Economy, Milwaukee owes the plaintiffs $50,000 in coverage. Similarly, the Economy policy provided for a total of $300,000 in coverage, reduced by the $200,000 payment from the tortfeasor and paid proportionately with Milwaukee for a coverage of $50,000.

Accordingly, the judgment of the circuit court is affirmed in part and reversed in part.

Affirmed in part; reversed in part.

LINN and JOHNSON, JJ., concur.