THIRD DIVISION
February 3, 2010

Nos. 1-08-3319 & 1-08-3628 (cons.)

| | | |
|---|---|---|
| ERIE INSURANCE EXCHANGE, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff and Counterdefendant-Appellee, | ) | Cook County. |
| | ) | |
| | ) | |
| v. | ) | No. 07 CH 4925 |
| | ) | |
| CHRISTINE TRIANA, CHRISTINE WAGNER, and | ) | |
| MICHAEL WAGNER, | ) | Honorable |
| | ) | Rita M. Novak, |
| Defendants and Counterplaintiffs-Appellants. | ) | Judge Presiding. |

JUSTICE STEELE delivered the opinion of the court:

This appeal arises from an order of the circuit court of Cook County granting plaintiff

Erie Insurance Exchange's (Erie) motion for summary judgment and denying defendants Michael

and Christine Wagner (the Wagners) and Christine Triana's (Triana) cross-motion for summary

judgment, finding that there was only $100,000 in total underinsured motorist (UIM) benefits

remaining for all defendants under the Erie policy. Erie filed this declaratory judgment action

against the  defendants, seeking a determination of the remaining policy limits under the Erie

policy when both Christine Wagner (Wagner) and Triana had previously received settlement

payments of $100,000 each from State Farm Mutual Automobile Insurance Company (State

Farm) as a result of the automobile accident. For the following reasons, we affirm.

BACKGROUND

On March 5, 2005, Triana was riding in a vehicle driven by Wagner on Illinois Route 20

in Galena, Illinois, when they were involved in an automobile accident with William Weinen

1-08-3319 & 1-08-3628 (cons.)

(Weinen). Wagner and Triana both made claims against Weinen for bodily injury and damages allegedly sustained as a result of the accident, and their claims were submitted to Weinen's insurance carrier, State Farm. Weinen's insurance policy provided coverage of $100,000 per person/$300,000 per accident. State Farm subsequently made payment under Weinen's policy to Wagner in the amount of $100,000 and a separate payment to Triana in the amount of $100,000.

The Erie policy was issued to the Wagners for a policy period of February 28, 2005, to February 28, 2006. The Erie policy provided UIM coverage limits of $300,000 each person/$300,000 each accident, subject to the limitations and reductions set forth in the policy.

Wagner and Triana then made claims under the UIM coverage available to the Wagners under the Erie policy, claiming that Weinen was an underinsured motorist. Erie tendered the total sum of $100,000 to Wagner and Triana, which Erie contended was the available limit under its policy after reduction of the policy limits for payments Wagner and Triana received from State Farm. Wagner and Triana rejected the $100,000 from Erie, contesting the amount of the remaining policy limits, and made a demand for arbitration to the American Arbitration Association as to their claims made under the Erie policy. Erie then commenced the underlying action, seeking a determination of the remaining policy limits, and additionally filed a motion to stay arbitration until such determination was made.[1] The Wagners filed a counterclaim, seeking a declaration as to the amount available under the UIM coverage of the Erie policy, and alleged vexatious delay under section 155 of the Illinois Insurance Code (Code) (215 ILCS 5/155 (West 2006)). Erie filed a motion to dismiss the counterclaim; defendants filed cross-motions for

---

[1]The trial court granted Erie's motion to stay the arbitration.

1-08-3319 & 1-08-3628 (cons.)

summary judgment on the declaratory judgment complaint.

The trial court entered an order on November 6, 2008, dismissing the Wagners' counterclaim and granting Erie's motion for summary judgment, finding that $100,000 in remaining coverage was available under the Erie policy for the claims made by Wagner and Triana. While acknowledging that the Erie policy was a split-limits policy, the court agreed with Erie's position that the $200,000 paid by State Farm to both Wagner and Triana must be set off in the aggregate against the $300,000 per-accident limit in the Erie policy, leaving only $100,000 in UIM benefits remaining to both the Wagners and Triana to be apportioned during arbitration. The court rejected the Wagners' argument that because the Erie policy was a split-limits policy, the setoff provisions required that only the $100,000 received by Wagner should be set off against her individual $300,000 per-person limit in determining the amount of her available UIM coverage, relying on Obenland v. Economy Fire & Casualty Co., 234 Ill. App. 3d 99 (1992). This timely appeal followed.

DISCUSSION

The Wagners and Triana have raised the following issues on appeal: (1) whether the trial court erroneously granted summary judgment in favor of Erie because the maximum amount of UIM coverage available in the split-limits Erie policy after applying the $100,000 setoff against the per-person limit of $300,000 for both the Wagners and Triana was $200,000; (2) whether the trial court erred in not finding the setoff provisions of the Erie policy to be ambiguous, and (3) whether the trial court improperly dismissed the Wagners' counterclaim.

In an appeal from the granting of summary judgment, we conduct a de novo review.

-3-

1-08-3319 & 1-08-3628 (cons.)

Pekin Insurance Co. v. Estate of Goben, 303 Ill. App. 3d 639, 642 (1999). Although it is recognized that summary judgment is a drastic means of disposing of litigation, it is appropriate in cases where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Pekin Insurance, 303 Ill. App. 3d at 642. In reviewing a grant of summary judgment, this court considers anew the facts and the applicable law and determines whether the circuit court was correct in its ruling. Frigo v. Motors Insurance Corp., 271 Ill. App. 3d 50, 57 (1995).

The construction of an insurance policy is a question of law and can be appropriately disposed of by summary judgment. Pekin Insurance, 303 Ill. App. 3d at 642. An insurance policy is a contract and, as such, is subject to the same rules of interpretation that govern the interpretation of contracts. Jones v. Country Mutual Insurance Co., 371 Ill. App. 3d 1096, 1098 (2007). Accordingly, when construing the language of an insurance policy, the court's primary objective is to determine and effectuate the parties' intentions as expressed in their written agreement. Pekin Insurance, 303 Ill. App. 3d at 642. If the terms in the policy are "clear and unambiguous," they must be given their plain and ordinary meaning. Pekin Insurance, 303 Ill. App. 3d at 642. If the terms are ambiguous, meaning that they are susceptible to more than one reasonable interpretation, they will be construed strictly against the insurer. Pekin Insurance, 303 Ill. App. 3d at 642. The court will interpret the policy as a whole, considering the type of insurance purchased, the nature of the risks involved, and the purpose of the contract. Pekin Insurance, 303 Ill. App. 3d at 642-43. Limiting provisions in the policy are construed liberally in favor of the insured and against the insurer. Pekin Insurance, 303 Ill. App. 3d at 642.

When determining whether an ambiguity between the terms of an insurance policy exists,

1-08-3319 & 1-08-3628 (cons.)

the provisions should be read together and not separately. Johnson v. Davis, 377 Ill. App. 3d 602, 607 (2007). The inquiry is whether the provision is subject to more than one reasonable interpretation, not whether other possibilities can be suggested. Johnson, 377 Ill. App. 3d at 607.

The Wagners and Triana first contend that the maximum amount of UIM coverage available in the split-limits Erie policy after applying the $100,000 setoff against the per-person limit of $300,000 for both the Wagners and Triana was $200,000 and that the setoff provisions of the Erie policy are ambiguous. Additionally, they argue that the trial court's reliance on Obenland was misplaced.

We disagree and find that the issue presented in the instant case is factually similar to the one before the court in Obenland. In that case, the plaintiffs were injured as pedestrians by a motorist whose insurance company tendered its policy limits of $100,000 per person. Obenland, 234 Ill. App. 3d at 103. Plaintiffs, who had UIM coverage with Milwaukee Guardian Insurance Company on three vehicles and Economy Fire & Casualty Company on another vehicle, sought to combine the UIM coverage for all of their policies.[2] Obenland, 234 Ill. App. 3d at 102-03. Both policies contained wording similar to that at issue in the case at bar. One of the issues raised by the Obenland plaintiffs was that the trial court erred in interpreting the Economy policy as providing for $300,000 in coverage, reduced by $200,000 from the underinsured motorist's insurer and paid proportionately with Milwaukee for a total coverage of $50,000. Obenland, 234

[2]The Milwaukee policy had split-limit UIM coverage of $300,000 per person and $300,000 per accident, while the Economy policy had single-limit UIM coverage of $300,000 per accident.

Ill. App. 3d at 112. Plaintiffs sought a ruling that the $300,000 UIM coverage limit under the Economy policy should be interpreted as meaning that Economy would pay until each plaintiff had received a total of $300,000 from Economy and the tortfeasor or until Economy itself had paid out $300,000. Obenland, 234 Ill. App. 3d at 112. The Obenland court cited to our supreme court's holding in Sulser v. Country Mutual Insurance Co., 147 Ill. 2d 548, 556 (1992), which explained the nature of underinsured motorist coverage, namely, that "underinsured motorist coverage was intended to fill the gap between the claim and the tortfeasor's insurance and was not intended to allow the insured to recover more than the amount of coverage provided under his policy's underinsured motorist coverage." Obenland, 234 Ill. App. 3d at 113. The Obenland court concluded that the Economy policy clearly and unambiguously provided policy limits of $300,000 per accident, reduced by the amounts paid on behalf of the tortfeasor. Obenland, 234 Ill. App. 3d at 113.

Turning to the case at bar, we reach the same conclusion. As indicated previously, the Erie policy provided UIM coverage in the split amounts of $300,000 per person/$300,000 per accident. The uninsured/underinsured motorist bodily injury endorsement contained the following limitations on Erie's duty to pay:

> "If coverage is purchased on a 'Split Limits' basis, '**your**'
> '**Declarations**' will show a PER PERSON and PER ACCIDENT
> limit for Uninsured/Underinsured Motorist Bodily Injury. The
> PER PERSON limit for Bodily Injury for one '**auto**' is the most
> '**we**' will pay for damages arising out of bodily injury or death to
> one person in any one accident. The PER ACCIDENT for one

'**auto**' is the most '**we**' will pay for damages arising out of bodily

injury or death to all persons resulting from any one accident,

subject to the PER PERSON limit.

\* \* \*

'**We**' will pay no more than the Uninsured/Underinsured

Motorist Coverage limits shown on the '**Declarations**' for any

'**auto**,' regardless of the number of persons '**we**' protect, '**autos we**

**insure**,' premiums paid, claims made or '**autos**' involved in the

accident."

In addition, the policy also contained the following provision related to reductions of the

limits of protection available under the Uninsured/Underinsured Motorist Coverage:

"The Limits of Protection available under this

Uninsured/Underinsured Motorist Coverage will be reduced by:

1.  the amounts paid by or for those liable for bodily injury

to **anyone we protect**."

The Erie policy defines "anyone we protect" as: "any person or organization **we** specifically state

is protected under the coverage being described." According to the UIM coverage section of the

policy, the policy protects "anyone [who] occup[ies] any owned auto it insures."

The Erie policy clearly and unambiguously states that the per-person limit is to be applied

to bodily injury or death of one person in an accident, while the per-accident limit is the most that

will be applied to all persons involved in any one accident, regardless of the number of people

involved. Here, two persons were injured in the accident, Triana and Wagner. Therefore, the

-7-

1-08-3319 & 1-08-3628 (cons.)

$300,000 per-accident policy limit applies, and that amount is the most that Erie contracted to pay for injuries arising from any one accident. Additionally, the Erie policy clearly and unambiguously provides that the policy limits would be reduced by the amounts paid on behalf of the tortfeasor. In this case, $200,000 has already been paid to the injured parties, Triana and Wagner, by State Farm on behalf of the other driver. Thus, only $100,000 of the $300,000 per-accident policy limit remains for Triana and Wagner to recover under the Erie policy. Accordingly, we find that the trial court did not err in concluding that the setoff provisions of the Erie policy were unambiguous and in granting summary judgment in favor of Erie.

The disposition of this issue makes it unnecessary to address the Wagners' other issue, namely, that the trial court improperly dismissed their counterclaim, which sought a declaration as to the amount available under the UIM coverage of the Erie policy and also alleged vexatious delay under section 155 of the Code (215 ILCS 5/155 (West 2006)).

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

COLEMAN, J., concurs.

PRESIDING JUSTICE MURPHY, specially concurring:

I concur in the affirmance of the trial court's grant of plaintiff's motion for summary judgment and denial of defendants' cross-motion for summary judgment. While *Obenland* is principally about the practice of stacking coverage, I agree with the majority that the contract language and facts of this case are in line with the ultimate conclusion in that case. Therefore, I concur that we must apply the ruling from the learned Justice Jiganti in that case to the clear and unambiguous terms of the policy.

-8-

1-08-3319 & 1-08-3628 (cons.)

However, I write separately to express concern raised by an unanswered question presented at oral argument that, with a stronger record, could raise ambiguities in that language. The unanswered question of plaintiff was exactly what benefit the Wagners received for the additional premium that they paid. It was argued that the extra premium was for the split-limit coverage. I must admit that I read the policy several times over before clearly understanding the import of the language. I not only empathize with defendants, but can envision a case where additional facts might render this language ambiguous, but, since I did not find evidence of record to overcome the fact the language of the policy is in line with established law, I concur.

1-08-3319 & 1-08-3628 (cons.)

| | REPORTER OF DECISIONS – ILLINOIS APPELLATE COURT |
|---|---|
| Please Use Following Form: | (Front Sheet to be Attached to Each Case) |
| Complete TITLE of Case | ERIE INSURANCE EXCHANGE,<br><br>Plaintiff and Counterdefendant-Appellee,<br><br>v.<br><br>CHRISTINE TRIANA, CHRISTINE WAGNER, and MICHAEL WAGNER,<br><br>Defendants and Counterplaintiffs-Appellants. |
| Docket No.<br><br>COURT<br><br>Opinion Filed | Nos. 1-08-3319 & 1-08-3628 (consolidated)<br>Appellate Court of Illinois<br>First District, THIRD Division<br><br>February 3, 2010<br>(Give month, day and year) |
| JUSTICES | JUSTICE STEELE delivered the opinion of the court:<br><br>Coleman, J.,                     concurs<br><br>Murphy, P.J.,              specially concurs |
| APPEAL from the Circuit Ct. of Cook County, Chancery Div. | Lower Court and Trial Judge(s) in form indicated in the margin:<br>County Department, Chancery Division<br>The Honorable    Rita M. Novak   , Judge Presiding. |
| For APPELLANTS, John Doe, of Chicago.<br><br>For APPELLEES, Smith and Smith of Chicago, Joseph Brown, (of Counsel)<br><br>Also add attorneys for third-party appellants or appellees. | Indicate if attorney represents APPELLANTS or APPELLEES and include attorneys of counsel. Indicate the word NONE if not represented.<br>Attorneys for **Defendants and Counterplaintiffs-Appellants**:<br><br>**(for Christine and Michael Wagner)**: Beerman, Swerdlove LLP, of Chicago, IL<br>(Alvin R. Becker and Katherine A. Grosh, of Counsel)<br><br>Levin, Riback Law Group, P.C., of Chicago, IL<br>(Richard I. Levin and Amy R. Perlman, of Counsel)<br><br>**(for Christine Triana):** Law Offices of Craig L. Manchik & Associates, P.C., of Chicago, IL<br>(Craig L. Manchik and Christian D. Elenbaas, of Counsel)<br><br>Attorneys for **Plaintiff and Counterdefendant-Appellee:** Best, Vanderlaan & Harrington, of Chicago, IL<br>(Lori A. Vanderlaan and Adam F. Haussermann, of Counsel)<br><br>McKnight, Kitzinger, McCarty & Pravdic, LLC, of Chicago, IL<br>(Stanley A. Kitzinger, of Counsel) |