2021 IL App (1st) 1-19-2524-U
Order filed: December 23, 2021

FIRST DISTRICT
FOURTH DIVISION

No. 1-19-2524

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| LOYA INSURANCE COMPANY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 2015 CH 15219 |
| | ) | |
| ALFONSO TOLENTINO, VERONICA TOLENTINO, | ) | Honorable |
| KAREN TOLENTINO, a Minor, by her Mother and Next | ) | Franklin U. Valderrama, |
| Friend, Eugenia Tolentino, and ANGEL M. SANTANA, | ) | Judge, presiding. |
| | ) | |
| Defendants-Appellees. | ) | |

_____

JUSTICE ROCHFORD delivered the judgment of the court.
Presiding Justice Reyes and Justice Martin concurred in the judgment.

**ORDER**

¶ 1     *Held*:  Judgments against plaintiff on its declaratory judgment complaint and in favor of defendants on their counterclaim in this insurance coverage matter are reversed, where the trial court incorrectly determined after trial that the claim of insured's spouse was settled under the policy's uninsured motorist coverage; remaining issues raised on appeal either cannot or need not be reviewed.

¶ 2     In this insurance coverage matter, plaintiff-appellant, Loya Insurance Company (Loya), appeals from trial court orders that: (1) denied its motion for summary judgment on its claim for declaratory judgment and on the counterclaim for similar relief filed by defendants-appellees, Alfonso Tolentino, Veronica Tolentino, and Karen Tolentino, a minor, by her mother and next friend, Eugenia Tolentino, (2) entered judgments against Loya and in favor of the defendants after

trial, and (3) denied Loya's posttrial motion. For the following reasons, we reverse the trial court's award of judgments against Loya and in favor of defendants after trial and find that the other issues raised on appeal either cannot or need not be reviewed for error.

¶ 3 In 2012, Loya issued an automobile insurance policy that provided coverage limits of $20,000 per person and $40,000 per accident for both bodily injury claims and for uninsured motorist (UM) claims. Defendant-appellee, Angel M. Santana, was identified therein as the named insured, with the policy providing primary coverage to both Angel and his spouse. However, with respect to the liability coverage, the policy contained an exclusion stating that Loya did not provide liability coverage to Angel "or any family member for bodily injury to you or to any family member." That exclusion was subject to an exception, however, pursuant to which liability coverage was provided "[t]o the extent of the minimum limits of Liability Coverage required by Illinois Compiled Statutes Annotated, Chapter 7, entitled 'Illinois Safety and Family Responsibility Laws.' " In 2012, that statute required automobile insurance policies to provide a minimum of $20,000 per person and $40,000 per accident in bodily injury liability coverage. 625 ILCS 5/7-203 (West 2012).

¶ 4 With respect to the UM coverage provided by Loya, the policy provided such coverage to Angel and "any family member" and provided coverage for "damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by a covered person, caused by an accident. The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the uninsured motor vehicle." The policy defined an "uninsured motor vehicle" as a motor vehicle "[t]o which no bodily injury liability bond or insurance policy applies at the time of the accident."

¶ 5 On December 9, 2012, Angel was driving his insured vehicle and his wife, Maribel

Santana, was a passenger in that vehicle. Angel and Maribel were then involved in an automobile accident with another vehicle occupied by Alfonso, Veronica and Karen Tolentino. Maribel submitted a UM coverage claim to Loya for injuries allegedly sustained in the accident, and Loya settled that claim for $20,000 in 2013. That settlement was memorialized in a release executed by Maribel on July 26, 2013, in which Maribel discharged Loya and Angel from any and all claims arising out of the accident. The release itself does not specifically indicate if Maribel's claim was paid by Loya pursuant to Angel's liability or UM coverage.

¶ 6    On December 8, 2014, Alfonso Tolentino, Veronica Tolentino, and Karen Tolentino, a minor, by her mother and next friend, Eugenia Tolentino (collectively, the Tolentinos) filed an underlying lawsuit against Angel to recover for injuries they allegedly suffered because of the accident. The record reflects that prior to filing this suit, counsel for the Tolentinos rejected Loya's offer to settle that suit for the remaining $20,000 Loya believed was available under Angel's liability coverage. Counsel for the Tolentinos noted that Maribel's claim was made against Angel's UM coverage, and further surmised that the claim was actually paid under that coverage under the assumption that Angel's policy included a standard and common "family exclusion" to liability coverage for claims between family members. As such, counsel for the Tolentinos concluded that the full $40,000 of liability coverage under Angel's policy remained available and demanded that amount to settle the underlying plaintiffs' claims. The underlying suit was filed after Loya refused this demand.

¶ 7    On October 15, 2015, Loya filed this declaratory judgment lawsuit seeking a declaration that Angel's policy only provides the remaining $20,000 per person and $20,000 per occurrence in liability coverage for the Tolentinos' claims due to the prior payment of $20,000 to settle Maribel's claim. A default judgment was entered against Angel, while the Tolentinos filed a

counterclaim seeking a declaration that Maribel's claim was settled and paid under the UM coverage provided by Angel's insurance policy.

¶ 8    The parties filed cross-motions for summary judgment. In its order addressing those motions, the trial court first concluded that the policy was unambiguous and that the effect of the combination of the family member exclusion and the exception to that exclusion discussed above (*supra* ¶ 3) was to grant Angel liability coverage for claims made by family members, including Maribel, up to the minimum $20,000 per person and $40,000 per accident amounts then required by Illinois law. However, the trial court noted that the policy also clearly provided Maribel UM coverage and that Loya did "not cite any authority to support the proposition that as a matter of law, UM Coverage cannot become effective if there is possible coverage for a family member under a policy's [liability] Coverage provision." After concluding that the record before it did not clearly establish exactly how Maribel's claim was settled and paid by Loya and that the issue could not be settled as a matter of law, the trial court denied the cross-motions for summary judgment.

¶ 9    The matter proceeded to trial, at which the parties entered the following joint exhibits into evidence: (1) Angel's insurance policy, (2) the declaration page for that policy, (3) a "Claim Inquiry" report regarding the accident generated by Loya on January 26, 2015, (4) a "Claim Transactions" report generated by Loya on February 3, 2016, which documented how Loya handled the claims arising out of the accident, (5) the release executed by Maribel, and (6) a June 19, 2014, letter from Loya to the Tolentinos' attorney indicating that Angel's policy only provides the remaining $20,000 per person and $20,000 per occurrence in liability coverage for the Tolentinos' claims because "a settlement of $20,000 had already been paid out to the passenger in our insured's vehicle," and tendering $20,000 to settle the matter.

¶ 10   Notably, the Claim Inquiry report identified Maribel as both a "BI" and "UM" claimant,

but also indicated that $20,000 was paid to her for her "BI" claim. No amount was listed as having been paid for her UM claim. Additionally, the Claims Transactions report indicated that while Maribel had submitted a policy limit UM demand, Loya had already coded her claim as a "BI" claim.

¶ 11    The sole witness at trial was Antonio Rojas, a Loya claims litigation manager who was a claims manager at the time the claim at issue here was adjusted. Rojas testified that the "BI" and the "UM" indications on the Claim Inquiry and Claims Transactions reports stood for, respectively, bodily injury and uninsured motorist. The Claim Inquiry report indicated that Maribel was paid $20,000 out of Angel's bodily injury coverage, leaving $20,000 in liability coverage remaining to cover any claims arising out of the accident. He also testified that Angel would not have been included in the release executed by Maribel if she was paid pursuant to her UM claim. He concluded that none of the documents entered into evidence suggested anything other than that there was only $20,000 in remaining liability coverage to cover any additional claims arising out of the accident and that, indeed, this result was dictated by the policy language. He did acknowledge that none of the documents specifically indicated that Maribel's UM claim had been denied, but insisted that regardless of the type of claim made Loya would pay out according to the policy language.

¶ 12    In a written order entered on May 31, 2019, the trial court entered judgment against Loya on its complaint and in favor of the Tolentinos on their counterclaim, declaring that the total remaining bodily injury coverage under Angel's policy for the accident was $20,000 per person and $40,000 per accident. The trial court found that Loya failed to meet its burden to prove that Maribel was paid under the policy's liability coverage, where: (1) it was undisputed that Maribel made a UM claim, (2) neither the release nor the June 19, 2014, letter specifically indicated that

Maribel's claim was settled under the bodily injury liability coverage of the policy, (3) Loya did not produce any evidence that it ever sent a letter denying Maribel's UM claim, and (4) there was no contemporaneous evidence that Loya paid Maribel's claim under the liability provisions of the policy, where the Claims Inquiry report was dated 2015.

¶ 13   Loya filed a posttrial motion to reconsider asking the trial court to correct certain findings of fact and law and render a judgment in its favor based on those corrections, pursuant to section 2-1203 of the Code of Civil Procedure. 735 ILCS 5/2-1203 (West 2018). In a written order entered on November 14, 2019, the trial court denied Loya's motion.

¶ 14   Loya timely appealed. On appeal, Loya challenges the denial of its motion for summary judgment, the judgments entered against it and in favor of the Tolentinos, and the denial of its posttrial motion.

¶ 15   As an initial matter, none of the defendants have filed an appellee's brief, and this court previously entered an order taking the appeal on the record and appellant's brief only. Under the standards set forth in *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 131 (1976), we find that this matter is easily decided in the absence of an appellee's brief and we will therefore address the merits of Loya's appeal.

¶ 16   Second, while Loya challenges the denial of its motion for summary judgment, "[w]hen a motion for summary judgment is denied and the case proceeds to trial, the denial of summary judgment is not reviewable on appeal because the result of any error is merged into the judgment entered at trial. [Citations.] The rationale for this rule is that review of the denial order would be unjust to the prevailing party, who obtained a judgment after a more complete presentation of the evidence." *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 355 (2002). As, such we cannot and will not further consider the trial court's ruling on Loya's summary

judgment motion and instead turn to its challenge to the judgments entered after trial.

¶ 17    The appropriate standard of review to be applied to declaratory judgments depends on the underlying questions at issue and "the nature of the proceedings in the trial court." *Pekin Insurance Co. v. Hallmark Homes, L.L.C.*, 392 Ill. App. 3d 589, 593 (2009). Here, the propriety of the judgments entered after trial present both questions of law and fact. The construction of an insurance policy involves a question of law, and therefore, our standard of review pertaining to those issues regarding the construction of Angel's policy is *de novo. American States Insurance Co. v. Koloms*, 177 Ill. 2d 473, 480 (1997); *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391 (1993). Under a *de novo* standard of review, this court does not defer to the lower's court judgment or reasoning but performs the same analysis that the lower court would perform. *Arthur v. Catour*, 216 Ill. 2d 72, 78 (2005).

¶ 18    For questions of fact in reviewing a lower court's grant or denial of declaratory judgment, this court applies a manifest weight of the evidence standard of review. *In re Marriage of Kranzler*, 2018 IL App (1st) 171169, ¶ 39. "A factual finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the determination is arbitrary, unreasonable, and not based on the evidence." *In re G.W.*, 357 Ill. App. 3d 1058, 1059 (2005).

¶ 19    With respect to Angel's policy, we further note that an insurance policy "is a contract and, as such, is subject to the same rules of interpretation that govern the interpretation of contracts. [Citation.] Accordingly, when construing the language of an insurance policy, the court's primary objective is to determine and effectuate the parties' intentions as expressed in their written agreement. [Citation.] If the terms in the policy are 'clear and unambiguous,' they must be given their plain and ordinary meaning. [Citation.]" *Erie Insurance Exchange v. Triana*, 398 Ill. App. 3d 365, 368 (2010). Furthermore, an insurance policy "must be construed as a whole, giving effect to

every provision." *West American Insurance Co. v. Yorkville National Bank*, 238 Ill. 2d 177, 184 (2010).

¶ 20     We begin with the trial court's analysis of Angel's insurance policy. The trial court was certainly correct in concluding that the combination of the family member exclusion and the exception to that exclusion operated to grant Angel bodily injury liability coverage for claims made by family members, including Maribel, up to the $20,000 per person and $40,000 per accident minimum amounts then required by Illinois law. The plain, clear and unambiguous policy language makes this clear. The trial court also correctly noted that the policy also provided Maribel with UM coverage in the same amounts. However, we part ways with the trial court where it faulted Loya because it did "not cite any authority to support the proposition that as a matter of law, UM Coverage cannot become effective if there is possible coverage for a family member under a policy's [liability] Coverage provision."[1]

¶ 21     There was no need for Loya to cite to any such authority. Again, if the terms in the policy are clear and unambiguous they must be given their plain and ordinary meaning, and an insurance policy must be construed as a whole, giving effect to every provision. *Supra* ¶19. While the policy may have provided Maribel with UM coverage for "damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle," it also specifically defined an "uninsured motor vehicle" as a motor vehicle "[t]o which no bodily injury liability bond or insurance policy applies at the time of the accident." As discussed above, and as the trial court itself recognized, the combination of the family member exclusion and the exception to that

---

[1] Although these specific findings and conclusions were included in the written order denying the cross-motions for summary judgment, they also clearly formed part of the basis for the order entered after trial.

exclusion operated to grant Angel bodily injury liability coverage for claims made by family members, including Maribel, up to the $20,000 per person and $40,000 per accident minimum amounts then required by Illinois law. Giving effect to every relevant provision of Angel's policy, at the time of the accident and with respect to any bodily injury claim made by Maribel, Angel was not an uninsured driver and he was not operating an uninsured motor vehicle. Thus, as a matter of law, the only coverage for Maribel's bodily injury claim against Angel under the policy was the bodily injury liability coverage granted by the combination of the family member exclusion and the exception to that exclusion.

¶ 22     Still, it may well be that the trial court was correct in determining that there remained an issue of fact as to whether Loya actually adjusted Maribel's claim in conformity with the policy language. Even accepting that is the case, however, the trial court's conclusion that Loya failed to establish that it paid Maribel's claim under Angel's liability coverage was against the manifest weight of the evidence.

¶ 23     It may well be that Maribel made a UM claim and Loya never sent a letter to her officially denying that claim. However, Rojas testified that regardless of the type of claim made Loya would only pay out in conformity with the policy language. Moreover, while the release may not have specifically indicated that Loya was settling a liability claim as opposed to a UM claim, the release did specifically release Loya *and* Angel from "any and all claims" and Rojas testified that Angel would not have been included in the release if Loya was settling a UM claim. The Claims Inquiry report indicated that Maribel was paid out of Angel's liability coverage and not pursuant to her UM claim. Finally, while the June 19, 2014, letter may not have specifically indicated that Maribel's claim was settled under the bodily injury liability coverage of the policy, it did specifically indicate that "a settlement of $20,000 had already been paid out to the passenger in

our insured's vehicle." This language clearly indicated that Loya considered Angel to be *insured*, and thus was not operating an uninsured motor vehicle such that any UM coverage would be applicable. On this evidence, the trial court's conclusion that Loya did not establish that it paid Maribel's claim under Angel's liability coverage was not based on the evidence and the opposite conclusion is clearly evident.

¶ 24    The only remaining issue raised on appeal is Loya's challenge to the denial of its posttrial motion. We need not further address this issue, however, as our reversal of the judgments entered against Loya and in favor of the Tolentinos renders it moot. "A moot question is one that existed but because of the happening of certain events has ceased to exist and no longer presents an actual controversy over the interest or rights of the party." *In re Nancy A*., 344 Ill. App. 3d 540, 548 (2003). Courts of review will not decide moot or abstract questions, will not review cases merely to establish precedent, and will not render advisory opinions. *Peach v. McGovern*, 2019 IL 123156, ¶ 64. There is simply no need to review the trial court's refusal to reconsider judgments we have already reversed.

¶ 25    For the foregoing reasons, the judgments of the circuit court are reversed. Pursuant to our authority under Illinois Supreme Court Rule 366(a)(5) (Ill. S. Ct. R. 366(a)(5) (eff. Feb. 1, 1994)), we also: (1) enter judgment in favor of Loya on its complaint and against the Tolentinos on their counterclaim, and (2) declare that Maribel's claim was paid under the liability coverage of Angel's policy and that therefore the total *remaining* bodily injury coverage under Angel's policy for the accident is $20,000 per person and $20,000 per occurrence.

¶ 26    Reversed; judgments entered.